**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RANDALL ALLAN YEE,
   *Petitioner-Appellee,*

v.

BILL DUNCAN, Warden,
   *Respondent-Appellant.*

No. 05-55265

D.C. No.
CV-03-01764-LGB

ORDER
WITHDRAWING
OPINION AND
OPINION

Appeal from the United States District Court
for the Central District of California
Lourdes G. Baird, District Judge, Presiding

Submitted February 9, 2006*
Pasadena, California

Filed September 11, 2006

Before: Alex Kozinski, Stephen S. Trott, and Carlos T. Bea,
Circuit Judges.

Opinion by Judge Trott

---

*This case was submitted for decision without oral argument.

**COUNSEL**

Barry J.T. Carlton, Deputy Attorney General, San Diego, California, for the respondent-appellant.

Randall Allan Yee, Pro Se, San Luis Obispo, California, for the petitioner-appellee.

**ORDER**

The Opinion filed on March 28, 2006, and reported at 441 F.3d 851 (9th Cir. 2006), is withdrawn. It may not be cited as precedent by or to this court or any district court of the Ninth Circuit.

With this action, the previous opinion filed March 28, 2006, becomes inoperative and the pending petition for

rehearing and petition for rehearing en banc becomes moot. The parties, should they so choose, are at liberty to file new petitions with respect to the new opinion.

So ORDERED.

---

**OPINION**

TROTT, Circuit Judge:

In *Batson v. Kentucky*, 476 U.S. 79 (1986), the United States Supreme Court established the principle that peremptory challenges may not be used to exclude jurors on account of race. Although *Batson* involved peremptory challenges based on race, in *J.E.B. v. Alabama*, 511 U.S. 127, 146 (1994), the Supreme Court subsequently extended *Batson*'s principles to peremptory challenges based on gender. The broader principle in *Batson* and later case law is that a defendant opposing a peremptory challenge bears the ultimate burden of proving the challenge was improper and that this burden never shifts. *See Purkett v. Elem*, 514 U.S. 765, 768 (1995).

In the present case, the district court concluded that the state trial and appellate courts unreasonably determined that habeas petitioner, Randall Allan Yee, failed to show purposeful discrimination. The district court's sole basis for granting Yee's petition was the prosecution's inability to explain one of her peremptory challenges. This inability by itself, however, is not dispositive, and did not relieve Yee of his ultimate burden of persuasion. Here, the trial court and the state appellate court determined that Yee did not meet that ultimate burden. That determination, in light of Supreme Court precedent and law from lower federal courts, was reasonable. Accordingly, we reverse the district court's decision and deny Yee's petition for habeas relief.

**I**

On October 21, 1999, petitioner, Randall Allan Yee, was charged with three counts of sexual battery in violation of California Penal Code § 243.4(c), and three counts of committing a lewd and lascivious act upon a child under age 14 in violation of California Penal Code § 288(a). The government alleged that Yee, a dental assistant, engaged in nonconsensual and improper sexual contact when he placed his penis in the hands of two adult women as they awoke from general anesthesia after dental procedures and repeatedly stuck his hand down a ten-year-old girl's pants and touched her vagina as he prepared her for a tooth extraction.

At Yee's trial, the prosecutor exercised during voir dire nine of her ten peremptory challenges. The first six were used to remove men; the seventh a woman, and the last two men. Yee continued to exercise his peremptory challenges after the prosecutor on two occasions had accepted the jury. When Yee's peremptory challenge brought a new venire member into the jury box, the prosecutor used a challenge to remove that individual, a man. Yee then objected under *People v. Wheeler*, 22 Cal. 3d 258 (1978), the California counterpart to *Batson*.[1] Yee then requested that the trial court declare a mistrial and begin jury selection anew, or, in the alternative, disallow the prosecutor from exercising her last peremptory challenge.

In response, the trial judge found a prima facie case of gender discrimination and requested that the prosecutor offer an explanation for striking each male juror in the order she exercised her peremptory strikes. When she came to Juror #4, the prosecutor explained, "I'm trying to remember what it was about [Juror #4]. If I can skip that one for a moment and move on." With the judge's permission, the prosecutor then offered

_____

[1]To the extent the *Wheeler* standard differs from *Batson*, the federal standard controls. *See Johnson v. California*, 125 S.Ct. 2410 (2005).

explanations for each of the remaining strikes. It is undisputed that the prosecutor offered gender-neutral reasons for striking seven of the eight male venire members. Returning to Juror #4, the prosecutor explained:

> And [Juror #4], unfortunately, your honor, I can't— I can't recall specifically what it was about [Juror #4]. I have down that he was a system analyst and that he was on a prior jury that reached a verdict and his wife was a homemaker, but other than that, to be honest, I can't recall.

Despite the prosecutor's failure to offer an explanation for striking Juror #4, the trial judge denied Yee's *Wheeler/Batson* objection, finding there had been "no systematic exclusion of the male gender." The trial court stated that it believed the prosecutor's representations to the court and found them unobjectionable.

On March 10, 2000, the jury convicted Yee on all counts. On July 7, 2000, the court sentenced Yee to eight years in state prison. On direct appeal, the California Court of Appeal affirmed Yee's conviction even though the prosecutor offered no reason for striking Juror #4. *People v. Yee*, No. G027598, 2002 WL 31661266 (Cal. Ct. App. Nov. 26, 2002). The California Court of Appeal examined voir dire testimony of the challenged jurors, and found that the prosecutor's reasons for excluding each potential juror were plausible and that the trial judge was justified in accepting them. As to Juror #4, the court noted that 1) a mere failure to remember was not conclusive, 2) the trial court was in the best position to determine whether the prosecutor honestly could not remember, and 3) there was sufficient voir dire testimony regarding Juror #4's previous service on a medical malpractice jury to provide a basis for exclusion. On February 11, 2003, the California Supreme Court denied review.

Yee filed a federal habeas petition on January 8, 2004. He raised four claims, including the assertion that the prosecution

impermissibly exercised peremptory challenges against male jurors. The district court granted relief on that ground only, concluding that "the prosecutor's failure to state a legitimate gender-neutral reason for striking [Juror #4] from the jury violated Petitioner's constitutional rights," and that the California Court of Appeal's decision affirming the trial court was an "objectively unreasonable application of *Batson* and its progeny." The district court reasoned that the prosecutor's inability to remember why she struck Juror #4 constituted a per se violation of Yee's equal protection rights and that it would be objectively unreasonable to conclude otherwise. The government appealed the district court's grant of the petitioner's writ.

## II

We review de novo the district court's grant or denial of a 28 U.S.C. § 2254 petition for writ of habeas corpus. *Bailey v. Rae*, 339 F.3d 1107, 1111 (9th Cir. 2003). Because Yee is in custody pursuant to a judgment of a state court, we may not affirm the district court's grant of habeas relief unless the California Court of Appeal's determination "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). We may, however, affirm the district court on any ground supported by the record, even if it differs from the district court's rationale. *Lambert v. Blodgett*, 393 F.3d 943, 965 (9th Cir. 2004).

"Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) (citing *Williams v. Taylor*, 529 U.S. 362, 413 (2000)).

However, the "unreasonable application" clause requires the state court decision to be "more than incorrect or erroneous." *Id.* "The state court's application of clearly established law must be objectively unreasonable." *Id.*

In applying these standards, we look to the "last reasoned decision" in the state court system, here, the opinion of the California Court of Appeal. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

## III

Whether Yee's habeas petition should be granted turns on whether it was objectively unreasonable for the California Court of Appeal to conclude that Yee did not meet his ultimate burden of establishing purposeful discrimination—even when the prosecutor stated she forgot the reason why she exercised the peremptory challenge to Juror #4, a statement the trial court accepted as credible. We hold that the California Court of Appeal's decision was not objectively unreasonable and conclude that the district court erred by not giving sufficient consideration to the Supreme Court's governing admonition that the "ultimate burden of persuasion regarding [discriminatory] motivation rests with, and never shifts from, the opponent of the strike." *Purkett*, 514 U.S. at 768. Instead, the district court focused too narrowly on the three-step process of production.

## A

The California Court of Appeal observed correctly the nature of Yee's equal protection claim and recognized the applicability of *Batson* and its progeny. Thus, the only remaining inquiry is whether the governing legal rules of these cases were reasonably applied to the particular facts of this case. *See Williams*, 529 U.S. at 412. "In determining whether a state court's decision involved an unreasonable application of clearly established federal law, it is appropriate

to refer to decisions of the inferior federal courts in factually similar cases." *Musladin v. Lamarque*, 427 F.3d 653, 658 (9th Cir. 2005) (quoting *Richardson v. Bowersox*, 188 F.3d 973, 978 (8th Cir. 1999) (internal quotation marks omitted)).

**[1]** In *Batson*, the Supreme Court held that "[p]urposeful racial discrimination in selection of the venire violates a defendant's right to equal protection because it denies him the protection that a trial by jury is intended to secure." 476 U.S. at 86. But the Court noted that "[a]s in any equal protection case, the burden is, of course, on the defendant who alleges discriminatory selection of the venire to prove the existence of purposeful discrimination." *Id.* at 93 (internal quotation marks and citations omitted). To aid the trial court in determining whether the defendant has met this burden, the Court provided a three-step inquiry. *Id.* at 96-98.

**[2]** Per the Supreme Court's direction, at step one, the defendant is required to make a prima facie showing that "he is a member of a cognizable racial group" and that the government exercised "peremptory challenges to remove from the venire members of the defendant's race." *Id.* at 96 (internal citations omitted). Second, the prosecutor must "articulate a neutral explanation related to the particular case to be tried." *Id.* at 98. Finally, the trial court has the "duty to determine if the defendant has established purposeful discrimination." *Id.*

**[3]** Subsequent Supreme Court and circuit case law has reiterated the three-step process, making it the most readily identifiable and frequent application of *Batson*. *See e.g.*, *Sims v. Brown*, 425 F.3d 560, 574 (9th Cir. 2005). However, the three-step inquiry should not be applied without consideration of other relevant factors. Recent Supreme Court case law has emphasized the importance of the over-encompassing principle that the burden to prove discrimination is always on the opponent of the challenge. In *Purkett*, the Supreme Court gave the three-step inquiry important context when it explained "that the ultimate burden of persuasion regarding

racial [or in this case gender] motivation rests with, and never shifts from, the opponent of the strike." 514 U.S. 765, 768 (1995). The Court thus made an important distinction between *Batson*'s first two steps, which are mere burdens of production, and step three, where the ultimate burden—the burden that "never shifts"—is decided. *Id.* at 768 ("It is not until the *third* step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination.") (internal citations omitted).[2]

Here, the California Court of Appeal identified *Batson* and its progeny as the controlling legal precedent. It applied these cases to the facts presented and concluded that Yee did not meet his ultimate burden of proof. Considering both the three-step inquiry announced in *Batson* and the "ultimate burden" language in *Purkett*, the California appellate court concluded

---

[2]*Purkett* also explained that the "admonition in *Batson* that to rebut a prima facie case, the proponent of a strike must give a clear and reasonably specific explanation of his legitimate reasons for exercising the challenges" was meant to "refute the notion that a prosecution could satisfy his burden of production by merely denying that he had a discriminatory motive or by merely affirming his good faith." *Id.* at 769 (internal quotation marks omitted). However, this does not mean that we halt the inquiry at step two. It means only that a simple denial of discriminatory motive or affirmance of good faith would leave the opponent of the strike to continue with his burden of proof, now aided by the opportunity to comment upon the prosecution's failure even to meet his burden of production to rebut the prima facie case, and to argue that, by itself, is sufficient to allow the court to grant the objection to the strike.

Similarly in *Paulino v. Castro*, we stated "[I]t does not matter that the prosecutor might have had good reasons to strike the prospective jurors. What matters is the *real* reasons they were stricken. The trial court did not pause to require an actual explanation from the prosecutor . . . ." 371 F.3d 1083, 1089-90 (9th Cir. 2004). While this prohibits speculation, it should not be read as prohibiting the consideration of circumstantial evidence by the court when other circumstances, such as forgetfulness, prevent the proponent of the strike from coming forward with an explanation for the strike.

that the trial court's determination was correct. We conclude
that the appellate court acted reasonably. The California Court
of Appeal's treatment of step two as a non-dispositive precur-
sor to the ultimate determination at step three was reasonable.

[4] Given the Supreme Court's explicit directive that the
ultimate burden is always with the defendant, any burden at
step two cannot be definitive. Why? Because the prosecution
would then bear the ultimate burden even though only an
inference of discrimination had been made. This is contrary
to what we have said is the purpose of *Batson*. "What matters
is the real reason" why the jurors were stricken, *Paulino*, 371
F.3d at 1090; inferences are simply not enough.

[5] Consequently, step two is an opportunity for the prose-
cution to explain the real reason for her actions. A failure to
satisfy this burden to produce—for whatever reason—
becomes evidence that is added to the inference of discrimina-
tion raised by the prima facie showing, but it does not end the
inquiry. The trial court then moves on to step three where it
considers all the evidence to determine whether the actual rea-
son for the strike violated the defendant's equal protection
rights.

[6] Perhaps nothing illustrates why the California Court of
Appeal's decision is reasonable more than the district court's
approach. The district court concluded that the prosecutor's
inability to give a reason, regardless of any evidence in the
record, rendered the jury selection process a per se violation
of Yee's equal protection rights. The district court focused
exclusively on the three-step inquiry—particularly step two.
The district court focused on language in *Batson* that identi-
fied step two as a "burden" that had to be overcome by the
prosecution. The district court determined that because the
prosecutor forgot the reason why she struck Juror #4, she
never met her burden of providing a race-neutral reason for
her actions and that this failure alone mandated reversal. As
a result, the district court never reached step three. In so

doing, the district court relieved Yee of his "ultimate burden of persuasion." *See Purkett*, 514 U.S. at 768.

This approach also led the district court to be critical of the trial court's consideration of circumstantial evidence in the record not presented by the prosecutor. This criticism is misplaced. If the stated purpose of *Batson* is to determine the "real" reason for the prosecutor's actions, *id.*, it is contrary to that purpose if we demand trial courts to ignore evidence of the prosecutor's "real" intent when it is available. Evidence of jury bias, or lack thereof, can never be irrelevant to a trial court's solemn duty to determine the ultimate issue of whether there has been purposeful discrimination.

**[7]** In sum, we conclude that it was not unreasonable for the California Court of Appeal to decide that Yee's equal protection rights were not violated. The three-step inquiry must be applied in congruence with the other legal principles articulated in *Batson* and *Purkett*. When this test is properly applied, a prosecutor's failure to provide a reason for striking a potential juror is not an automatic violation of equal protection. Such a failure, or in this case an assertion of bad memory, is evidence of discrimination. This evidence notwithstanding, the trial court must still proceed to step three before it can determine that purposeful discrimination has occurred.

## B

The reasonableness of the California Court of Appeal's decision is substantiated by two of our sister circuits' opinions and recent Supreme Court dicta suggesting approval of those opinions. We turn to the circuits first.

In *Bui v. Haley*, the Eleventh Circuit rejected the analysis proffered by the district court when it stated that "mere failure to explain every strike of black jurors will not necessarily prevent a prosecutor from successfully rebutting a prima facie

case of race discrimination, where there is sufficient circumstantial evidence [in the record] from which the court can deduce a race-neutral reason." 321 F.3d 1304, 1317 (11th 2003). The Eleventh Circuit reversed in part the district court's denial of the habeas petition holding the trial court could not reasonably have found that an assistant prosecutor was in a position to know the lead prosecutor's reasons for the strikes and, therefore, could not rely on the assistant's reasons. But in the portion of the opinion relevant to this case, the court held it was proper for the Alabama Supreme Court to allow a trial judge to rely on "circumstantial evidence to support an inference that a race-neutral reason underlies a particular strike, despite the lack of any explicit race-neutral explanation from the State." *Id.*

The Eleventh Circuit is not alone. In *United States v. Forbes*, the Fifth Circuit indicated its approval of the Eleventh Circuit's position noting that " '[f]ailure by a prosecutor to explain every peremptory strike of black jurors is not necessarily fatal to the prosecutor's ability to rebut a prima facie case.' " 816 F.2d 1006, 1011 n.7 (5th Cir. 1987) (quoting *United States v. David*, 803 F.2d 1567, 1571 (11th Cir. 1986)).

These circuit cases notwithstanding, the most salient, albeit non-binding, authority is found in *Johnson*. In *Johnson* the question before the Supreme court was whether *Batson* permitted the state of California to require opponents of a strike to show, at step one, whether it was "more likely than not" that the other party's peremptory challenge was based on impermissible group bias. 125 S.Ct. at 2416. The Court recognized that "states do have flexibility in formulating appropriate procedures to comply with *Batson*," and concluded that the " 'more likely than not' standard is an inappropriate yardstick by which to measure the sufficiency of a prima facie case." *Id.* In coming to its conclusion, the Court emphasized the directive it set forth in *Purkett*: "The first two *Batson* steps govern the production of evidence that allows the trial court

to determine the persuasiveness of the defendant's constitutional claim." *Id.* at 2417. The Court went on to explain that it was not until step three that "the trial court determines whether the opponent of the strike has carried his [ultimate] burden of proving purposeful discrimination." *Id.* (quoting *Purkett*, 514 U.S. at 768). Accordingly, the Supreme Court rejected any standard that changed step one into a burden of persuasion rather than a burden of production used to manage the introduction of evidence.

**[8]** In a footnote, the Court indicated a similar concern with regard to step two, and addressed a fact pattern similar to the one at hand,

> In the unlikely hypothetical in which the prosecutor declines to respond to a trial judge's inquiry regarding his justification for making a strike, the evidence before the judge would consist not only of the original facts from which the prima facie case was established, but also the prosecutor's refusal to justify his strike in light of the court's request. Such a refusal would provide additional support for the inference of discrimination raised by a defendant's prima facie case.

*Id.* at 2418 n.6. Thus, the Supreme Court—interpreting *Batson* and its progeny—indicated, as we hold today, that a failure to provide an explanation for exercising a strike does not relieve the trial court of its responsibility to make the ultimate determination of whether there has been purposeful discrimination. Consequently, because the Supreme Court was not creating new case law in *Johnson*, but merely interpreting *Batson*, we find it difficult to conclude that the same interpretation, here made by the California Court of Appeal, is objectively unreasonable.

## IV

**[9]** Having determined that the prosecutor's failure to explain Juror #4's strike is not a per se violation of Yee's

equal protection rights, we now consider whether the California Court of Appeal unreasonably determined from the facts of the record that Yee did not meet his burden of proving purposeful discrimination with regard to Juror #4. Based on our review of the record, we conclude there was sufficient evidence to support the trial court's determination that Yee never met his burden. The voir dire testimony suggests a gender-neutral reason why the prosecutor might have wanted to challenge Juror #4: Juror #4 had served as a juror on a medical malpractice case. As the California Court of Appeal noted, such service could well have brought the juror too close to the malpractice issues presented in Petitioner's case, which arise from acts Yee committed in his dental office. Moreover, the prosecutor twice accepted the jury and the prosecutor had non-discriminatory, objectively verifiable reasons for excluding all of the other removed venire members. Accordingly, it was reasonable for the trial court to conclude that, though the prosecutor could not remember the reasons for challenging Juror #4, Yee did not establish purposeful discrimination.

## V

[10] We conclude that California Court of Appeal decision was not objectively unreasonable and, therefore, reverse the district court's order granting Yee's habeas petition.

**REVERSED** and **REMANDED** with instructions to enter judgement on behalf of Respondent Duncan.