**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ERICK RAYMUNDO GONZALEZ,
          *Petitioner-Appellant,*

v.

EDMUND G. BROWN, Attorney
General; STATE OF CALIFORNIA;
JOHN MARSHALL, Warden,
          *Respondents-Appellees.*

No. 07-56107

D.C. No.
CV-03-04067-DSF

OPINION

Appeal from the United States District Court
for the Central District of California
Dale S. Fischer, District Judge, Presiding

Argued and Submitted
August 31, 2009—Pasadena, California

Filed October 30, 2009

Before: Ronald M. Gould and Richard C. Tallman,
Circuit Judges, and Owen M. Panner, District Judge.*

Opinion by Judge Gould

---

*The Honorable Owen M. Panner, Senior District Judge for the District
of Oregon, sitting by designation.

14643

## COUNSEL

Shawn R. Perez, Law Offices of Shawn R. Perez, Las Vegas, Nevada, for appellant Erick Raymundo Gonzalez.

David F. Glassman, Office of the Attorney General of California, Los Angeles, California, for appellees Edmund G. Brown, John Marshall and State of California.

## OPINION

GOULD, Circuit Judge:

We consider the significance of a prosecutor's stated inability to recall the reason for exercising a peremptory strike to remove an African-American potential-juror, pursuant to the second step of the *Batson* inquiry. We hold that in view of the relatively low number of peremptory challenges that the prosecutor exercised against African-American jurors, the prosecutor's ability to justify her other peremptory challenges with specificity and to the state court trial judge's satisfaction, as well as the fact that two African-American jurors remained on the jury and a third was a prospective juror, we cannot say that the California Court of Appeal's denial of Gonzalez's *Batson* claim was contrary to Supreme Court precedent or an objectively unreasonable application of such precedents. Therefore, the district court properly denied habeas corpus relief in this case governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), and we affirm.

**I**

Gonzalez was charged with possession of cocaine base for sale under California Health & Safety Code Section 11351.5. He was tried to a jury in Los Angeles County Superior Court. Jury selection began on Thursday afternoon and ended on Friday morning. During jury selection, the prosecution exercised four of its ten peremptory strikes. Three of these strikes excused African-American jurors. After the third African-American juror was excused, Gonzalez—who is also African-American—made a *Wheeler* motion,[1] alleging that the strikes were motivated by Gonzalez's race.

---

[1]*People v. Wheeler*, 22 Cal. 3d 258 (1978) is the California state-law equivalent of *Batson v. Kentucky*, 476 U.S. 79 (1986). To the extent that *Wheeler* and *Batson* differ, the *Batson* standard controls. *Yee v. Duncan*, 463 F.3d 893, 896 n.1 (9th Cir. 2006).

The sequence was as follows: the prosecution's first peremptory strike excused an African-American juror. Gonzalez then exercised his first peremptory strike, at which point the prosecution accepted the panel. Gonzalez next exercised his second peremptory strike, and the prosecution exercised its second peremptory strike to excuse a Caucasian juror. Gonzalez exercised his third strike, and the prosecution again accepted the panel. The trial court recessed for the day.

The next morning, the jury box contained seven additional prospective jurors. The prosecution exercised its third peremptory strike to excuse an African-American juror. Gonzalez accepted the panel. The prosecution then exercised its fourth peremptory strike to excuse another African-American juror, and Gonzalez made his *Wheeler* motion. The state trial court agreed with Gonzalez that the strikes created a "classical" inference of racial bias, and asked that the prosecution explain its reasoning.

The prosecution justified excusing the second African-American juror on the grounds that "yesterday [the juror] had been very evasive when [the trial court] asked her specifically about the suspension, the license suspension." In addition, the prosecution observed that the juror had been accepted as part of the panel several times on Thursday, but that the composition of the jury had changed overnight.

The prosecution justified excusing the third African-American juror on the grounds that "[the trial court] asked [the juror] several times [on Friday] about would [he] require the People to prove it beyond all doubt? And even though [the trial court] kept explaining it to [the juror], he kept answering he expects the People to prove it beyond all doubt, was his repetitive answer."

The prosecution could not recall its reason for excusing the first African-American juror.

The trial judge stated that in light of the prosecution's explanation for excusing two of the jurors on Friday and the fact that the prosecution accepted the panel twice on Thursday, the court was satisfied that no racial prejudice was involved. Defense counsel objected that the prosecutor had not provided an explanation for striking the first juror. The trial court again stated that it was satisfied with the prosecution's overall explanation, noting that two African-American jurors were currently sitting on the panel, a third was a prospective panelist, and there were "at least three or four Hispanic jurors in the panel[,] [s]o I think that we're safe here."

Gonzalez was convicted of possession of cocaine base, and he appealed. The California Court of Appeal affirmed the conviction, giving deference to the trial court's determination that the prosecutor had a "bona fide" reason for exercising her peremptory challenges. The Court of Appeal concluded that Gonzalez had not met his ultimate burden of persuasion to prove purposeful discrimination with respect to the first juror.[2] Gonzalez sought discretionary review in the California Supreme Court without success.

After failing to gain relief in the state courts, Gonzalez filed his petition for a writ of habeas corpus in the United States District Court for the Central District of California. The district court denied the petition, and a Ninth Circuit panel granted Gonzalez a certificate of appealability on the *Batson* issue. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. We affirm.

---

[2]In addition, the Court of Appeal hypothesized about the reason the prosecution may have struck the first juror. The juror had responded to a question about religious views with the following statement: "I am a strong believer in forgiving and—I am a strong believer that what applies to one person should apply to another. And if I make a moral judgment toward one person, I should be in a position to be judged the same way regardless of my position in the case." This exchange, the Court of Appeal opined, "was a reasonable and neutral basis for excusing her from the case." As we explain in footnote six, *infra*, we need not review whether this determination was a reasonable application of *Batson*.

## II

We review a district court's denial of a petition for habeas corpus de novo. *Mendez v. Knowles*, 556 F.3d 757, 767 (9th Cir. 2009). Gonzalez filed his petition after the effective date of the AEDPA. Thus, we apply AEDPA deference to any state court decision on the merits. The federal district court was required to deny a habeas petition unless the state court's adjudication of the claims resulted in a decision (1) contrary to, or involving an unreasonable application of, clearly established federal law, as determined by the U.S. Supreme Court, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). To qualify as clearly established federal law, the Supreme Court need not apply a rule to a fact pattern precisely identical to this case. *Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). Moreover, Ninth Circuit cases may provide persuasive authority for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Mendez*, 556 F.3d at 767.

## III

**[1]** So important is the need to avoid intentional racial discrimination in the selection of a jury, and so important is the need for procedures conducive to the forming of a jury that can be expected—so far as is feasible—to act without racial bias, that a prosecutor cannot use a single peremptory strike to excuse a juror on the basis of an impermissible motive such as race. *Batson v. Kentucky*, 476 U.S. 79, 95-96 (1986). A single peremptory strike, if purposely discriminative, will be enough to upset a jury conviction. *Batson* was clearly established law in 2001, when the California Court of Appeal decided Gonzalez's appeal. Since then, the Supreme Court has further discussed what *Batson* clearly established when it reviewed the case of *Miller-El v. Dretke* on a writ of habeas corpus. 545 U.S. 231, 251-52 (2005) (considering a *Batson* challenge on AEDPA review and determining that the appli-

cation of *Batson* by the Texas Court of Appeals in 1992 was unreasonable).[3]

**[2]** In *Miller-El*, the Court stated that "[w]hen the government's choice of jurors is tainted with racial bias, that overt wrong casts doubt over the obligation of the parties, the jury, and indeed the court to adhere to the law throughout the trial . . . . The rub has been the practical difficulty of ferreting out discrimination in selections discretionary by nature . . . ." 545 U.S. at 238 (internal quotation marks and citations omitted). The Court then discussed how in *Batson* "we accordingly held that a defendant could make out a prima facie case of discriminatory jury selection by 'the totality of the relevant facts' about a prosecutor's conduct during the defendant's own trial." *Id.* at 239 (citing *Batson*, 476 U.S. at 94, 96). "Once the defendant makes a prima facie showing, the burden shifts to the State to come forward with a neutral explanation for challenging jurors within an arguably targeted class." *Id.* (internal quotation marks omitted) (*quoting Batson*, 476 U.S. at 97). "[T]he prosecutor must give a clear and reasonably specific explanation of his legitimate reasons for exercising the challeng[e]." *Batson*, 476 U.S. at 98 n.20 (internal quotation marks omitted). "The trial court then will have the duty to determine if the defendant has established purposeful discrimination." *Id.* at 98. "[T]he rule in *Batson* provides an opportunity to the prosecutor to give the reason for striking the juror, and it requires the judge to assess the plausibility of that reason in light of all evidence with a bearing on it. It is true that peremptories are often the subjects of instinct, and it can sometimes be hard to say what the reason is. But when illegit-

---

[3]We recognize that *Miller-El* is not the only *Batson* challenge the Supreme Court has addressed in recent memory. *See Johnson v. California*, 545 U.S. 162 (2005). However, because *Johnson*, unlike *Miller-El*, was decided on direct appeal instead of a writ of habeas corpus, it is of little relevance to what about *Batson* was "clearly established" at the time Gonzalez's conviction became final. *See Schriro v. Summerlin*, 542 U.S. 348, 352 (2004) (discussing non-retroactivity of new criminal procedural rules on habeas corpus appeal).

imate grounds like race are in issue, a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives." *Miller-El*, 545 U.S. at 251-52 (internal citations omitted).

If the prosecutor does not meet his or her burden at step two, the trial court must still decide, at step three, whether the defendant has met his ultimate burden of persuasion. *See Yee v. Duncan*, 463 F.3d 893, 899 (9th Cir. 2006); *see also Johnson v. California*, 545 U.S. 162, 171 n.6 (2005). "A *Batson* challenge does not call for a mere exercise in thinking up any rational basis. If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false." *Miller-El*, 545 U.S. at 252.

**[3]** Our Circuit law suggests that in evaluating a *Batson* challenge, we will consider both the prosecutor's stated reasons and circumstantial evidence. *Yee*, 463 F.3d at 899-900; *see also Miller-El*, 545 U.S. at 240 (noting that *Batson* explained that a defendant may rely on "all relevant circumstances" to raise an inference of purposeful discrimination). Nevertheless, we will not supply a reason for the prosecutor to have exercised her strike because we cannot know what were her true motives. *See Miller-El*, 545 U.S. at 252 (stating a court of appeals may not supply a reason for a challenge when the prosecutor's stated reason is insufficient); *see also Paulino v. Castro,* 371 F.3d 1083, 1090 (9th Cir. 2004) [hereinafter *Paulino I*] ("[I]t does not matter that the prosecutor might have had good reasons to strike the prospective jurors. What matters is the *real* reason they were stricken."). The issue boils down to considering how the existence of a discriminatory purpose is to be assessed in the context where a prosecutor has been unable to articulate a bona-fide reason for a peremptory strike. What happens then? Is the failure to state a valid reason at step two of *Batson* a per se violation of *Batson*, or is it necessary more fundamentally to consider the

totality of circumstances and thence to decide if the prosecutor's peremptory strike was purposefully discriminatory?

**[4]** We are not the first panel on the Ninth Circuit to review a *Batson* challenge in which the prosecutor, at the second step of the *Batson* framework, could not remember the reason he or she struck a juror. In *Yee v. Duncan*, we held that a prosecutor's "failure to satisfy this burden to produce [and explain the reason for her strike]—for whatever reason—becomes evidence that is added to the inference of discrimination raised by the prima facie showing, but it does not end the inquiry." *Yee*, 463 F.3d at 899. Instead, the court has the "responsibility to make the ultimate determination of whether there has been purposeful discrimination." *Id.* at 901. Thus *Yee* counsels that an ultimate decision must be made whether there was purposeful discrimination and the failure of the prosecutor to give a good reason for the strike is not a per se violation of *Batson*.

**[5]** In *Paulino v. Harrison*, 542 F.3d 692 (9th Cir. 2008) [hereinafter *Paulino II*], we determined that "[i]n a case such as Paulino's, where the state has *not* put forward an actual reason, '[s]uch a failure, or in this case an assertion of bad memory, is evidence of discrimination.' " *Id.* at 702 (*quoting Yee*, 463 F.3d at 900). Therefore, "[w]here the state fails to meet its burden of production, the evidence before the district court at step three—the prima facie showing plus the evidence of discrimination drawn from the state's failure to produce a reason—will establish purposeful discrimination by a preponderance of the evidence in most cases." *Id.* at 703. Thus *Paulino II* also suggests that a failure of the prosecutor to give a valid reason for a strike does not result in a per se violation of *Batson* but instead the district court must consider all of the circumstances and the burden of showing discrimination that lies on the habeas petitioner.

We have found no precedent of the United States Supreme Court squarely addressing whether, when the prosecutor

stands silent as to reason for one strike, but other circumstances—such as valid reasons for other strikes and the overall composition of the jury—suggest the absence of discrimination, the prosecutor's inability to respond at step two requires a determination of violation of the rule of *Batson*.[4]

[6] In light of Yee and *Paulino II*, and the absence of any clear contrary declaration from the United States Supreme Court, we cannot hold under the AEDPA that the California

---

[4]The closest thing to guidance in the *Batson* decision itself states: "Nor may the prosecutor rebut the defendant's case merely by denying that he had a discriminatory motive or affirming his good faith in making individual selections. If these general assertions were accepted as rebutting a defendant's prima facie case, the Equal Protection Clause would be but a vain and illusory requirement." *Batson*, 476 U.S. at 98 (internal quotation marks and citations omitted). Although *Batson* for good reason stresses the need for a prosecutor to give specific grounds for a strike rather than a general denial of discrimination, nothing in it establishes a per se rule requiring determination of a *Batson* violation when a prosecutor fails to give reasons at step two.

Similarly, the Court in *Miller-El*, which was decided after the state appellate decision, but which might be considered to shed light on the meaning of the applicable *Batson*, emphasized: "[I]t can sometimes be hard to say what the reason [for exercising a peremptory challenge] is. But when illegitimate grounds like race are in issue, a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives." 545 U.S. at 252. Again the court doesn't announce that a per se violation occurs when a prosecutor cannot give reasons for a strike.

And in *Johnson*, the Supreme Court opined: "In the unlikely hypothetical in which the prosecutor declines to respond to a trial judge's inquiry regarding his justification for making a strike, the evidence before the judge would consist not only of the original facts from which the prima facie case was established, but also the prosecutor's refusal to justify his strike in light of the court's request. Such a refusal would provide additional support for the inference of discrimination raised by a defendant's prima facie case." 545 U.S. at 171 n.6. So again we have some strong language on the importance of a prosecutor explaining reasons for a strike, but even this dicta does not go so far as to suggest a per se rule to be invoked upon prosecutorial silence concerning motivation.

Court of Appeal unreasonably applied *Batson*.[5] It correctly identified *Batson* as the appropriate standard of review and correctly employed the three-step procedure. The California Court of Appeal properly recognized that while *Batson* involved burden shifting, the ultimate burden to show a discriminatory act rests with the defendant. Gonzalez argues that in light of the detailed responses given by the prosecution for striking the two other African-American prospective jurors, the prosecutor's memory lapse regarding the first juror is evidence of discrimination and Gonzalez is therefore entitled to habeas relief. However, despite the prosecution's failure to meet its burden of production at *Batson* step two, it was not an unreasonable application of *Batson* to consider the totality of the circumstances surrounding the strikes, noting that Gonzalez could "point to no other factors other than [the first juror's race] which suggested that she was excused on [a racial] basis alone."[6] *See Yee*, 463 F.3d at 899.

   [7] Nor can we say that the state trial court made an unreasonable determination of fact in concluding that the prosecu-

---

[5]The prosecution's total inability to explain a peremptory strike is troubling, because note taking during jury selection would have provided an easy remedy and avoided assessment of the issue placed before us. It is obviously a desirable and correct practice for a prosecutor to have notes of reasons for a peremptory strike if a challenge is raised requiring a race-neutral explanation at step two of *Batson*. But absent such notes or ability of a prosecutor to recall why a strike was made, the implications of prosecutorial silence on the reasons for a particular peremptory strike must be addressed. We need not decide whether we might interpret *Batson* differently if this were a direct appeal from a federal court trial, for in the context of a state prisoner's federal court challenge to confinement by seeking a writ of habeas corpus, we are bound by the superordinate strictures of the AEDPA.

[6]In light of the circumstantial evidence supporting the trial court's decision, we need not decide whether the California Court of Appeal could offer a hypothetical justification for the prosecution's first peremptory strike consistent with the requirements of *Batson*. However, the language of the Supreme Court in *Miller-El* is suggestively to the contrary. *See Miller-El*, 545 U.S. at 252; *see also Paulino I*, 371 F.3d at 1090.

tion's strike was not an act of purposeful discrimination. Unlike the circumstances in *Paulino II*, the evidence that Gonzalez raised to support an inference of discrimination at *Batson*'s first step was not stark. The prosecutor used four peremptory strikes, three of them against African-American jurors, but three potential African-American jurors remained on the panel, two were seated in the jury box, and the prosecutor had six peremptory strikes left to exercise. *Cf. Paulino I*, 371 F.3d at 1091 (determining an inference of bias was raised where the prosecutor removed eighty-three percent of possible African-American jurors using five out of six possible peremptory challenges). While the issue of whether these facts supported the inference to establish the first step of *Batson* is not before us, they are relevant to whether it was objectively unreasonable to conclude Gonzalez had not met his ultimate burden at *Batson* step three. *Cf. Yee*, 463 F.3d at 901 (concluding that Petitioner did not establish purposeful discrimination taking into account the prosecution's prior acceptance of the panel).

First, the prosecutor accepted one of the African-American jurors twice before she exercised a peremptory strike to remove that juror. This suggests that her motives for exercising the strike were not racial but, as she stated, had to do with the jury composition. The first time the prosecutor accepted that juror on the panel, she had nine additional peremptory strikes that she could exercise, and the second time she had eight additional strikes. These facts illustrate that the prosecutor did not accept that juror twice simply because her peremptory strikes were running low. *Cf. Miller-El*, 545 U.S. at 249 (discussing a prosecutor's acceptance of one African-American juror when the state had few peremptory strikes left).

Another factor weighing against a determination that Gonzalez has met his burden to prove discrimination is that at the time of Gonzalez's *Wheeler* motion, three African-American jurors remained on the venire and two in the jury box. The

fact that African-American jurors remained on the panel "may be considered indicative of a nondiscriminatory motive." *Turner v. Marshall*, 121 F.3d 1248, 1254 (9th Cir. 1997); *see also Batson*, 476 U.S. at 96 (noting the court must consider "all relevant circumstances" in determining whether a particular defendant has raised an inference of discrimination). Again, the prosecutor still had six peremptory strikes that she could exercise—quite a few—and she did not excuse any of the remaining African-American jurors.

**[8]** Further, the state trial court credited the prosecutor's nondiscriminatory reasons for the exercise of her other two strikes, and we properly should give a measure of deference to this factual determination. Gonzalez does not argue on appeal that those reasons were pretextual. We are confronted with a single challenge to a single juror, not a challenge to the elimination of all or most of the jurors of a particular race. *Compare Yee*, 463 F.3d 893 (reversing the grant of habeas on AEDPA standard of review where prosecutor could not recall why she had stricken one juror) *with Paulino II*, 542 F.3d 692 (affirming the grant of habeas on de novo review where the prosecutor could not recall why she had stricken *any* of the African-American jurors). While the single use of a racially motivated peremptory strike will justify reversal, *see Batson*, 476 U.S. at 95-96, the fact that the prosecutor could articulate coherent reasons for her Friday strikes makes her explanation that she simply could not remember why she had excused the first juror on Thursday more believable.

**[9]** In the final analysis the key question for the state trial court was whether there was purposeful discrimination. The prosecutor's failure to give a valid and race-neutral reason for her peremptory strike of the first juror weighs against her in an assessment of her motive, but that is not all that was before the state trial court and it had other good reasons to conclude there was not purposeful discrimination. Whatever might be required in interpreting *Batson* on a direct federal appeal, there is no proper basis in the record here for habeas corpus

relief favoring a state prisoner under the statutory standard of the AEDPA as conclusively interpreted by the United States Supreme Court.

**IV**

**[10]** For the reasons stated above, the district court's denial of Gonzalez's federal habeas corpus petition is **AFFIRMED.**