**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MATTHEW R. WATTS, | No. 07-17237 |
| Plaintiff - Appellant, | D.C. No. 1:06-cv-00809-DLB |
| v. | |
| JAMES A. YATES, | MEMORANDUM[*] |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Eastern District of California
Dennis L. Beck, Magistrate Judge, Presiding

Argued and Submitted June 15, 2010
San Francisco, California

Before: RYMER and FISHER, Circuit Judges, and PALLMEYER, District
Judge.[**]

Matthew Watts was convicted of carjacking, attempted carjacking, theft, and

arson after a bench trial in the Superior Court of Madera County, California, and

sentenced to thirteen-and-a-half years. Before and during trial, he asserted, among

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

[**] The Honorable Rebecca R. Pallmeyer, United States District Judge for
the Northern District of Illinois, sitting by designation.

other delusional beliefs, that he was a member of the British Royal Family; that his father and various federal agencies had placed a camera in his head; and that the camera would be removed if he were sent to prison. Two psychologists concluded that Watts was incompetent to stand trial, but the trial court relied on the opinion of a third psychologist who concluded that Watts was competent and that he was faking his delusions in an attempt to avoid prison. Before and during trial, the court refused to reconsider its ruling on competency, despite finding, as part of its verdict, that Watts was motivated by his paranoid delusions when he committed the carjacking. The California Court of Appeal affirmed, and the California Supreme Court denied Watts's petition for review. Watts then filed a petition for habeas corpus in federal court. The district court denied the petition, and Watts appeals. We reverse and remand with directions to grant the writ.

Our review of the district court's denial of a petition for a writ of habeas corpus is *de novo*. *Bailey v. Hill*, 599 F.3d 976, 978 (9th Cir. 2010). We agree with the district court that the state courts' adjudication of Watts's claims did not involve an unreasonable application of law. 28 U.S.C. § 2254(d)(1). We discuss only whether the state courts' adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(2). A decision is "based on an

unreasonable factual determination" if we are "convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record." *Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004).[1]

The Supreme Court has held that the trial of an incompetent defendant violates the Constitution's Due Process Clause. *Indiana v. Edwards*, 128 S. Ct. 2379, 2383 (2008); *Drope v. Missouri*, 420 U.S. 162, 171 (1975). A defendant is incompetent if "he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope*, 420 U.S. at 171. When evidence before the trial court raises a

---

[1] The state argues that we should apply 28 U.S.C. § 2254(e)(1)'s heightened presumption of correctness to state court factual findings, but that presumption only comes into play if the state court fact-finding process survives the reasonableness review of (d)(2) and the petitioner attempts to present new evidence in federal court. *Lambert v. Blodgett*, 393 F.3d 943, 978 (9th Cir. 2004); *Taylor v. Maddox*, 366 F.3d 992, 999-1001 (9th Cir. 2004). Watts did not present any new evidence in federal court.

The state also argues that record evidence not discussed by the California Court of Appeal is off limits because such evidence was not before the California Supreme Court, which normally relies on the appellate court's statement of facts. CAL. R. CT. 8.500(c)(2). This argument misconstrues the California Supreme Court's rule; accepting the facts as summarized by the appellate court is not the same as refusing to consider the record as a whole. *Miller v. Dep't of Corrections*, 115 P.3d 77, 81 n.3 (2005). More importantly, though, the state explicitly waived this argument in the district court when it stated that Watts had exhausted all of his claims.

3

"bona fide doubt" about a defendant's competency, the judge must *sua sponte* order a competency hearing. *Pate v. Robinson*, 383 U.S. 375, 385 (1966). The judge's responsibility is not discharged after such a hearing, though; it continues through trial under the same "bona fide doubt" standard. *Drope*, 420 U.S. at 181.

Watts makes three separate arguments about competency: that the trial court's initial competency finding at the competency hearing was unreasonable based on the evidence then before the court, that the trial court's refusal to later reconsider that finding was unreasonable based on new evidence produced after the hearing, and that the trial court unreasonably failed to *sua sponte* hold a renewed competency hearing after Watts testified at trial.

We hold first that the trial court's competency finding after the hearing was not an unreasonable finding of fact. Dr. Adrian Della Porta testified at the hearing that Watts was malingering. Although some evidence presented at the time of the competency hearing contradicted Della Porta's conclusion and some of the bases for that conclusion, that evidence was not so strong that the trial judge's competency finding was unreasonable. There is no reason to believe that the trial court overlooked the contradictory evidence. *Cf. Taylor*, 366 F.3d at 1000-01 (state fact-finding process is unreasonable when highly probative evidence central to petitioner's claim is overlooked). Watts would have had the trial court give the

4

contradictory evidence more weight, but its failure to do so was not unreasonable. *See Gonzalez v. Brown*, 585 F.3d 1202, 1210-11 (9th Cir. 2009).

Watts next challenges the state appellate court's ruling on the trial court's reaffirmance of its competency finding when the court allowed Watts to withdraw his insanity plea. In affirming that second competency finding, the California Court of Appeal stated that "[t]here was no new evidence nor was there a change in circumstances requiring the trial court to hold a second hearing." We disagree. There was significant new evidence: Dr. Michael Zimmerman, one of the psychologists who initially found Watts to be incompetent, had prepared two reports after the competency hearing, and both contained important new information about Watts's condition. Moreover, Watts's refusal to enter an insanity plea following the competency hearing also constituted important new evidence because, like Dr. Zimmerman's reports, it contradicted Dr. Della Porta's conclusion, adopted by the court, that Watts was faking his mental illness to support an insanity plea. Because Della Porta's report relied so heavily on a belief that Watts wanted to be placed in a mental institution, the new contradictory evidence was highly probative. Thus, the ruling of the appellate court affirming the trial court's factual finding, which overlooked that evidence, was based on an unreasonable determination of fact. *Taylor*, 366 F.3d at 1000-01. Based on the

5

analysis below, we need not make our own finding on whether, at the time the trial court reaffirmed its competency finding, there was a bona fide doubt as to Watts's competence.

Watts's final argument is that the trial court should have *sua sponte* conducted a competency hearing after his trial testimony. The California Court of Appeal acknowledged that Watts had "exhibited some bizarre behavior," but held that the record did not demonstrate any error in failing to hold a competency hearing after Watts testified. In *Drope*, 420 U.S. at 180, the Supreme Court discussed three categories of evidence relevant to determining whether a further inquiry into competence is required: "evidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion." Watts points to evidence in all three categories.

First, there is Watts's irrational behavior regarding his plea. It is not unusual for a defendant to change his mind about what plea he wants to enter, but Watts's reasons for changing his mind were highly unusual. He first refused an insanity plea and attempted to plead guilty because he believed he was not insane and did not want to be hospitalized or medicated. Watts's request to change his plea was continued to the next hearing, where he entered a not guilty plea and again rejected the possibility of an insanity plea, stating that he had been found competent and

6

was not retarded. On the morning of trial, Watts's lawyer and the prosecutor believed that Watts had agreed to change his plea again, to guilty. Watts told the court that he was pleading guilty so he would not be placed in a mental institution where his brain would be incapacitated, and that he needed to have the camera in his head removed or he needed to be locked up. After a recess, Watts informed the court, without explanation, that he wanted to change his plea yet again, back to not guilty. As further examples of irrational behavior, Watts points to his inability to communicate with counsel regarding his desire to testify, and his implication, through a hearsay statement by counsel, of the court in a conspiracy against him.

Next, Watts points to his demeanor at trial, including his insistence that counsel ask one of the carjacking victims if he was aware of Watts's royal status and his interruption of his father's testimony. The most significant evidence in this category, though, is Watts's own trial testimony. In that testimony, Watts repudiated his plea of not guilty by confessing to all of the charges, and he repeated the delusional beliefs that motivated him to commit the crimes. It is impossible to read the transcript of Watts's testimony, supposedly delivered in his defense, without questioning his competence to stand trial. Competent defendants do not typically plead not guilty, but then take the stand and volunteer an unsolicited confession. *See Torres v. Prunty*, 223 F.3d 1103, 1109-10 (9th Cir. 2000) (holding

7

that "defendant's unusual and self-defeating behavior in the courtroom suggested that an inquiry into competence was required").

Finally, Watts discusses the medical opinions, relying primarily on the reports that Dr. Zimmerman prepared after the competency hearing. He argues that by the time he had finished testifying, the factual basis for Dr. Della Porta's report had been thoroughly undermined by Zimmerman's reports and by Watts's own testimony. Indeed, Della Porta's belief that Watts was hoping to avoid jail by faking his delusions is all but impossible to square with Watts's refusal to enter an insanity plea, his in-court confessions to crimes he had pleaded not guilty to, and his repeatedly stated desire to be sent to prison rather than a mental institution. Moreover, the evidence presented at trial that Watts's mental instability began before he committed the crimes contradicted another of the bases for Della Porta's conclusion. Despite all these factors weighing against Della Porta's conclusion, a trial court finding that continued to rely on Della Porta's report might not be unreasonable. *See Maggio v. Fulford*, 462 U.S. 111, 117 (1983) (pre-AEDPA ruling deferring to trial court's reasoned determination of competency). Here, though, the trial court made no finding that Watts was competent following his testimony. On the contrary, the court made a very significant finding suggesting that Watts was *not* competent. In explaining its verdict, the court found that

8

Watts's delusions were truly motivating him when he committed the crimes. That finding cannot be reconciled with Della Porta's conclusion that Watts was fabricating his symptoms of mental illness and was not truly delusional.

The relevant evidence that had been presented to the trial court by the time it announced its verdict was the following: new evidence of incompetence in Dr. Zimmerman's second and third reports; Watts's refusal to enter an insanity plea; his repeated vacillating over what type of plea to enter and the delusional reasons for that vacillation; and, finally, Watts's own bizarre trial testimony, based on which the trial court found his delusions to be genuine, thus contradicting the only report finding him competent. Considering all that evidence, we hold that the trial court should have had a bona fide doubt as to Watts's competence. The only substantial evidence supporting competency–Dr. Della Porta's report–had been so seriously questioned that a new competency hearing was required. *See McMurtrey v. Ryan*, 539 F.3d 1112, 1126-27 (9th Cir. 2008). The trial court's failure to hold a new competency hearing violated Watts's due process rights, and the appellate court's affirmance resulted in a decision based on an unreasonable determination of facts in light of the evidence. 28 U.S.C. § 2254(d)(2).

In some cases, a retrospective competency hearing may be held, but such hearings are generally disfavored. *McMurtrey*, 539 F.3d at 1131. A new hearing

9

in this case would be held more than six years after trial, a length of time

determined to be too long in both *Drope* and *Pate*. *Drope*, 420 U.S. at 183; *Pate*,

383 U.S. at 387. A retrospective hearing has a better chance of success when there

are contemporaneous medical reports, as there are here. *See Odle v. Woodford*,

238 F.3d 1084, 1089-90 (9th Cir. 2001) (medical records created at time of trial

and subsequently were sufficient to allow for meaningful retrospective hearing

eighteen years after trial). In this case, though, the only report supporting

competence is Dr. Della Porta's. As explained, that report cannot be relied upon,

so a meaningful retrospective hearing is not possible.

Accordingly, we reverse the judgment of the district court and remand with

instructions to grant a writ of habeas corpus directing the state to provide Watts

with a new trial, giving due attention to his competence to stand trial. *See*

*generally* CAL. PENAL CODE § 1370 (California procedure for resolving

competency, which allows for commitment of incompetent defendants). If the

state elects not to retry Watts, it must release him.

**REVERSED and REMANDED**.