**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DELBERT PAULINO,
            *Petitioner-Appellee,*

v.

C. MICHAEL HARRISON, Warden,
            *Respondent-Appellant.*

No. 07-55429

D.C. No.
CV-00-03327-GPS

OPINION

Appeal from the United States District Court
for the Central District of California
George P. Schiavelli, District Judge, Presiding

Argued and Submitted
November 9, 2007—Pasadena, California

Filed September 4, 2008

Before: Richard A. Paez and Johnnie B. Rawlinson,
Circuit Judges, and Suzanne B. Conlon,* District Judge.

Opinion by Judge Paez

*The Honorable Suzanne B. Conlon, Senior United States District Judge for the Northern District of Illinois, sitting by designation.

12179

**COUNSEL**

Margaret E. Maxwell, Supervising Deputy Attorney General, Los Angeles, California, for the respondent-appellant.

Katherine Froyen, Deputy Federal Public Defender, Los Angeles, California, for the petitioner-appellee.

---

**OPINION**

PAEZ, Circuit Judge:

Delbert Paulino ("Paulino"), an African-American male, was tried and convicted of second degree robbery, kidnaping for robbery, and first degree murder in Los Angeles County Superior Court. He is currently serving a life sentence, plus one year, without the possibility of parole. In his 28 U.S.C. § 2254 habeas petition, Paulino alleges that the jury that convicted him was unconstitutionally constituted, in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). We previously considered this petition in *Paulino v. Castro* ("*Paulino I*"), 371 F.3d 1083 (9th Cir. 2004), where we held that Paulino had established a prima facie case of discrimination and remanded his petition to the district court for an evidentiary hearing. After conducting that hearing, the district court granted Paulino's habeas petition. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

**I.**

Jury selection in Paulino's trial took place in November 1997. The prosecutor used five of her six peremptory challenges to strike five of the six African-American veniremembers from the jury panel. The final jury included one African-American juror.

After the fifth African-American venire-member was removed by the prosecutor, defense counsel made a *Wheeler* objection.[1] In a conference with counsel, the trial judge discussed the stricken African-American venire-members and speculated as to why the prosecutor might not have wanted them to serve on the jury. The trial judge concluded that each of the strikes was permissible:

> I realize on the bare record here we have six peremptory challenges and five of them appear to be exercised against African Americans. . . . [The prosecutor] knows her case better than I do. And I find that there were objective reasons for all of these jurors to be excused. And at this point I find no prima facia [sic] case because I can see the objective reasons that seem to be present here and that would be my feeling.

Only at that point did the trial judge allow defense counsel to put forward an argument. Defense counsel argued: "Well, I would point out as the court has observed the statistical improbability of five out of six is such [as] to give rise to an inference that these peremptory challenges were in part based upon race." The court was unconvinced: "I agree with you, it statistically looks bad. But when I look at every one . . . . If you kind [of] go down the line, I can see why [the prosecutor] would be uncomfortable with each one of them. Based upon that, I find no prima facie case." The prosecutor took no part in the exchange.

After he was convicted, Paulino raised his *Wheeler* claim before the California Court of Appeal. That court similarly rejected his claim, holding that Paulino had not established a prima facie case of discrimination. The California Supreme Court summarily denied his petition for review. Having pre-

---

[1] *People v. Wheeler*, 22 Cal. 3d 258 (1978), is California's equivalent of *Batson*. *See Paulino I*, 371 F.3d at 1088 n.4.

sented his claim to the state courts, Paulino filed a federal habeas petition, alleging, in part, that the prosecutor's use of peremptory challenges violated *Batson*.

The district court initially dismissed Paulino's petition. *Paulino I*, 371 F.3d at 1085. As noted, we reversed the district court's judgment and remanded for further proceedings. *Id*. at 1092. We concluded that "[t]he process employed by the trial court to evaluate Paulino's objection clearly contravened the procedure outlined in *Batson*," *id*. at 1089, and moreover, Paulino had met his prima facie burden under *Batson*. *Id*. at 1091 ("Paulino has . . . raised an inference of discrimination, as over 83 percent of possible black jurors were excluded by the prosecutor in his case.").[2]

Having so concluded, we remanded the case to the district court to conduct an evidentiary hearing to allow the prosecutor "to explain her actual motivations for her peremptory challenges." *Paulino I*, 371 F.3d at 1092. We explained:

> The trial court never required the prosecutor to do so, relying instead on its own speculation as to what might have been the prosecutor's reasons. No evidentiary hearing was held below, so the state has

---

[2]In *Paulino I*, we determined that we were not bound by Antiterrorism and Effective Death Penalty Act ("AEDPA") deference and reviewed Paulino's *Batson* claim de novo because "the [California] court of appeal employed the incorrect legal standard." *Paulino I*, 371 F.3d at 1090. As we explained: "We have held that the *Wheeler* standard 'is impermissibly stringent in comparison to the more generous *Batson* "inference" test.' Thus, 'California courts in following the 'strong likelihood' language of *Wheeler* are not applying the correct legal standard for a prima facie case under *Batson*.' " *Id*. (citing *Wade v. Terhune*, 202 F.3d 1190, 1197 (9th Cir. 2000)). *See also Copperwood v. Cambra*, 245 F.3d 1042, 1047 (9th Cir. 2001) (applying *Wade v. Terhune*'s de novo review where the state court used the *Wheeler* "strong likelihood" standard); *cf. Frantz v. Hazey*, 533 F.3d 724, 733 (9th Cir. 2008) (en banc) (stating that the use of the incorrect legal rule or framework constitutes error under the "contrary to" prong of 28 U.S.C. § 2254(d)(1)).

never been required to present evidence of the prosecutor's actual, non-discriminatory reasons for striking the five black jurors. On remand, the district court shall hold a hearing so the state will have an opportunity to present evidence as to the prosecutor's race-neutral reasons for the apparently-biased pattern of peremptories, and determine whether the prosecutor violated *Batson*.

*Id.*

That evidentiary hearing was held before a magistrate judge on March 7, 2005. The prosecutor who tried Paulino's case in state court was the sole witness. In brief, she testified that she had absolutely no memory of jury selection, nor of her actual reasons for striking any of the venire-members in question. She could not find the notes she had taken during jury selection,[3] and she testified that reading the voir dire transcript did not refresh her recollection. Nothing in the state court record reflected her contemporaneous thoughts on why she struck the African-American venire-members because the trial court never required her to explain the reasons for the five strikes.

Therefore, instead of explaining her actual non-discriminatory reasons for exercising her peremptory challenges, the prosecutor offered hypothetical race-neutral reasons for striking each potential African-American juror in question. She acknowledged that the reasons she articulated were mere speculation drawn from her reading of the voir dire transcript. Indeed, she testified that all the parties present—herself, the State's attorney, Paulino's attorney, the magistrate judge—were "on the same page"; all each could do was comment on the transcript.

---

[3]The prosecutor had only retained her notes that pertained to the jurors who ultimately composed the jury; she testified that she had long ago disposed of any other notes she may have taken.

The magistrate judge took great pains to make sure the record was clear on this point and offered the prosecutor every opportunity to clarify whether she had any independent or refreshed recollection of her reasons for striking the African-American venire-members. Her response was pellucid: she did not.

> *The Court*: "So is the court to disregard your previous testimony where you went through the record and gave the court a narrative explaining what you—fleshing out what you believe were your thoughts because you really don't know?"

> *The Witness*: "I can tell you that what I was asked is based upon looking at this transcript what are the things that may have come into mind, and based on that those were the answers to those questions. Do I have an independent recollection of why I did or did not ask to excuse jurors? I don't."

> . . . .

> *The Court*: "So I need to have this understood and counsel for the state needs to understand your witness has just said that her entire narrative explanation is really speculation. That's what she just said to me. She said that she doesn't have any independent recollection beyond what's actually in the record . . . . So I want the record to be very clear that's what she has just said. Is that correct?"

> *The Witness*: "That's correct."

> . . . .

> *The Court*: "Let me ask this because I really want to make sure I am clear on this. Apart from the transcript that's before us, you have absolutely no inde-

pendent recollection as to what your motivations were in exercising peremptory challenges; is that correct?"

*The Witness*: "That's correct . . . . I can tell you that I do not excuse jurors on the basis of race. I've articulated that to both counsel. I think it's inappropriate. It's absolutely wrong, and I don't do it, and I haven't done it in my practice."

The magistrate judge summed up at the close of the hearing:

I want to make sure that we don't obfuscate the fact that basically your witness has said, I have no independent recollection and my recollection has not been refreshed and so what I have said is my speculation about what I may have been thinking at the time, but I can't tell you that it was my reasoning. That's what she said to me.

After the hearing, the magistrate judge issued a Report and Recommendation ("R & R") recommending that the district court find that the prosecutor used her peremptory challenges to discriminate against African-Americans in violation of *Batson* and grant Paulino's petition. The magistrate judge explained that "[w]hile the state may satisfy its burden through the use of circumstantial evidence, it must nonetheless articulate the actual reason jurors were removed; mere conjecture cannot satisfy the state's burden." He concluded that because the State only offered the prosecutor's speculation about why she may have used her strikes, it did not "supply [the] court with any reasons for the prosecutor's peremptory challenges," thereby failing to meet its step two burden of production under the *Batson* framework.

The magistrate judge went on to make three recommendations. First, because Paulino had established a prima facie

case of discrimination and the State had failed to produce any race-neutral reasons at step two, he concluded that Paulino was entitled to habeas relief:

> Given the prosecutor's pattern of striking all but one black juror and accepting the jury only when it contained this sole black juror, in combination with her failure to present *any actual* reasons for striking the jurors in question, a preponderance of the evidence supports the elements of the prima facie case. Thus, if the inquiry is to end at step two, this Court should grant habeas relief.

Second, the magistrate judge recommended that "[i]f a step three analysis is mandated, petitioner is still entitled to habeas relief." He concluded, quoting *Paulino I*, that "[w]ithout any evidence to 'influence the starkness of these disparities,' [established by petitioner] this Court is left with no option but to find a *Batson* violation." (quoting *Paulino I*, 371 F.3d at 1091).

Last, in yet a third alternative recommendation, the magistrate judge determined that even if he were to consider the prosecutor's speculative reasons for striking the veniremembers as "actual" reasons, "a comparative juror analysis reveal[ed] [the] apparent disparate treatment of the jurors by the prosecutor," because she had accepted jurors with the same characteristics as the ones that she had stricken but for their race. In other words, even the prosecutor's speculative reasons for striking the African-American venire-members were pretextual. In sum, the magistrate judge recommended finding that " 'all relevant circumstances' indicate that the prosecutor exercised her peremptory challenges in a racially discriminatory manner."

The district court adopted the magistrate judge's R & R in

its entirety; the court did not reject any proposed findings of fact or conclusions of law.[4]

---

[4]The district court's order provided: "Accordingly, the Court ORDERS that: (1) the Report and Recommendation of the United States Magistrate [Judge] is ADOPTED and (2) the Petition is GRANTED." The State contends that the district court only adopted the R & R's first alternative recommendation—that if the analysis ends at step two, Paulino prevails. The State misreads the district court's order. In its order adopting the R & R, the district court noted:

> Inasmuch as the [prosecutor's] concession meant the second prong could not be met, there was no reason to go on to the third prong, i.e., to show the race-neutral reasons for challenging the jurors were merely pretextual . . . . There was no reason for the Magistrate Judge to proceed to undermine reasons that were not being offered by proceeding to the third prong of *Batson/ Wheeler*. The analysis should have stopped at the second prong because, as the Magistrate [Judge] correctly concluded, the prosecution could not offer any neutral reasons for the challenges at trial and, consequently, failed to satisfy its burden under the second test.

We understand the district court's comments to mean that without any race-neutral reasons, there was nothing to analyze for pretext. In other words, there was no need for the magistrate judges's *third* alternative recommendation—namely, the futility of a comparative juror analysis in the absence of a factual record. The district court did not comment on the magistrate judge's bottom line recommendation, essentially a step three determination—that the prima facie case plus lack of race-neutral reasons proved discriminatory intent by a preponderance of the evidence. The district court emphasized this point when it ruled on the State's ex parte motion for a stay of the judgment, explaining that "the Court finds Petitioner's burden to show purposeful discrimination was carried by his prima facie showing of discrimination, as found by the Ninth Circuit, and Respondent's total lack of production at the second step of the *Batson* analysis."

In any event, although the district court saw no need for the magistrate judge's comparative juror analysis, it did not reject or modify the R & R in any respect. Instead, it adopted the R & R in whole and granted the petition. As we explain *infra*, on this record, we agree that there is no need to engage in a hypothetical comparative juror analysis to justify the grant of habeas relief.

## II.

We review de novo the district court's decision to grant a petition for habeas corpus. *Leavitt v. Arave*, 383 F.3d 809, 815 (9th Cir. 2004) (per curiam). We review the district court's factual determinations for clear error. *United States v. Collins*, 90 F.3d 1420, 1430 (9th Cir. 1996). As we held in *Paulino I*, the California Court of Appeal's application of the incorrect legal standard for evaluating the prima facie case of discrimination takes this claim outside of the AEDPA framework and requires us to review it de novo. *Paulino I*, 371 F.3d at 1090; *Wade*, 202 F.3d at 1197.[5]

[1] The *Batson* framework proceeds in three steps. First, a defendant raising a *Batson* claim must establish a prima facie case of discrimination. The burden of production then shifts to the prosecutor to offer race-neutral reasons for the peremptory strikes. After the prosecutor comes forward with race-neutral reasons, "[t]he trial court then will have the duty to determine if the defendant has established purposeful discrimination." *Batson*, 476 U.S. at 98. *See also Snyder v. Louisiana*, 128 S. Ct. 1203, 1207, ___ U.S. ___ (2008).

[2] At *Batson*'s second step, the question of whether the state has offered a "race-neutral" reason is a question of law that we review de novo. *Tolbert v. Page*, 182 F.3d 677, 680 n.5 (9th Cir. 1999) (en banc). At step three, the question of whether the defendant has proven purposeful discrimination is a question of fact that we review for clear error. *Id.*; *see also Batson*, 476 U.S. at 98 n.21 (explaining that the ultimate finding of intentional discrimination at step three is a finding of fact, and "a reviewing court ordinarily should give those findings great deference").

---

[5]We also note that because no state court ever reached the issue before us, we are not bound by AEDPA's strictures. *See Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002) (holding that "when it is clear that a state court has not reached the merits of a properly raised issue, we must review it de novo").

## III.

## A.

The focus of our inquiry is whether the State met its burden of production at *Batson*'s step two. The district court, in adopting the magistrate judge's R & R, determined that the evidence presented by the State—the prosecutor's rank speculation—was insufficient to meet its burden. The State challenges this conclusion and argues that the prosecutor's testimony, taken as a whole, constituted persuasive circumstantial evidence of her actual non-discriminatory reasons for striking the five African-American venire-members. We disagree. Because the prosecutor could only speculate about her reasons for striking these potential jurors, the district court did not err in concluding that the State failed to meet its burden of production.

[3] *Batson*'s step two requires evidence of the prosecutor's *actual* reasons for exercising her peremptory challenges. As the Supreme Court has explained:

> The *Batson* framework is designed to produce actual answers to suspicions and inferences that discrimination may have infected the jury selection process. The inherent uncertainty present in inquiries of discriminatory purpose counsels against engaging in needless and imperfect speculation when a direct answer can be obtained by asking a simple question.

*Johnson v. California*, 545 U.S. 162, 172 (2005) (citing *Paulino I*, 371 F.3d at 1090 ("It does not matter that the prosecutor might have had good reasons . . . what matters is the real reason [the jurors] were stricken.") (emphasis deleted) and *Holloway v. Horn*, 355 F.3d 707, 725 (3d Cir. 2004) ("[S]peculation . . . 'does not aid our inquiry into the reasons the prosecutor actually harbored' for a peremptory strike")); *see also Turner v. Marshall* ("*Turner II*"), 121 F.3d 1248,

1253 (9th Cir. 1997) ("The arguments that the State has made since the evidentiary hearing do not form part of the prosecutor's explanation."); *Riley v. Taylor*, 277 F.3d 261, 282 (3d Cir. 2001) (en banc) ("Apparent or potential reasons do not shed any light on the prosecutor's intent . . . ."); *Mahaffey v. Page* 162 F.3d 481, 483-84 (7th Cir. 1998) (explaining that the court must examine "actual" reasons as opposed to "apparent" reasons).

[4] Evidence of a prosecutor's actual reasons may be direct or circumstantial, but mere speculation is insufficient. *Johnson*, 545 U.S. at 172 ; *Paulino I*, 371 F.3d at 1090; *Yee v. Duncan*, 463 F.3d 893, 898 n.2 (9th Cir. 2006) (noting that where direct evidence is unavailable, the State may rely on circumstantial evidence to establish motive); *Bui v. Haley*, 321 F.3d 1304, 1314-18 (11th Cir. 2003) (stating that circumstantial evidence may be used to meet the step two burden, but mere conjecture is insufficient and therefore warrants habeas relief). As outlined above, the difficulty here is that the state court trial judge did not require the prosecutor to explain the strikes, and when asked at the evidentiary hearing in the district court, the prosecutor had no recollection of her actual reasons. All she could do was speculate about why she may have struck the five African-American jurors. On this record, the district court did not err in concluding that the speculative reasons offered by the prosecutor did not constitute circumstantial evidence of her actual reasons.[6]

The State attempts to turn the prosecutor's testimony about the transcript into circumstantial evidence by recasting her conjectured reasons as "reconstructed" reasons. The State lifts

---

[6]We have defined "circumstantial evidence" as "that which establishes the fact to be proved only through inference based on human experience that a certain circumstance is usually present when another certain circumstance or set of circumstances is present." *Radomsky v. United States*, 180 F.2d 781, 783 (9th Cir. 1950). That is, circumstantial evidence is a set of facts from which another fact may be inferred, as opposed to direct evidence, which goes directly to the fact to be established.

the term "reconstructed" from cases, like this one, that involved "reconstruction" hearings—that is, an evidentiary hearing that takes place some time after the trial, where the prosecutor testifies to her actual reasons for striking the venire-members in question, or the State presents circumstantial evidence of those reasons—and misapplies it to the prosecutor's testimony here.[7] Her reasons were not "reconstructed," as that term is used in *Batson* cases; they were constructed out of whole cloth. As the district court found, the prosecutor did nothing more than guess why she might have removed the jurors in question.

[5] Unlike in the reconstruction cases referenced by the State, the prosecutor in this case did not have an independent recollection of her actual reasons for striking the jurors in question; the voir dire transcript did not refresh her recollection; her jury selection notes no longer existed; and there were no contemporaneous oral statements regarding the contested strikes because the trial court never asked her for an explanation.[8] *Cf. Turner II*, 121 F.3d at 1250-51(holding that at step two, the State met its burden where review of voir dire transcript and contemporaneous notes refreshed the prosecutor's recollection); *Jordan*, 293 F.3d at 591-92 (noting that prosecutor had his handwritten notes from voir dire, and the voir dire transcript included the prosecutor's reasons for striking jurors); *Green*, 414 F.3d at 293-94 (noting that the prosecutor relied on her original notes from voir dire to refresh her recollection). No authority supports the State's claim that pure

---

[7]*See, e.g.*, *Turner II*, 121 F.3d at 1250-51(discussing the evidence the state presented to establish the prosecutor's actual reasons for striking the jurors in question); *Jordan v. Lefevre*, 293 F.3d 587, 591-92 (2d Cir. 2002) (same); *Green v. Travis*, 414 F.3d 288, 293-94 (2d Cir. 2005) (same).

[8]Nor does the transcript of jury voir dire itself illuminate the prosecutor's actual reasons. The trial judge conducted the questioning of the prospective jurors; neither defense counsel nor the prosecutor questioned them. Although a prosecutor's questions might provide some evidence of the prosecutor's actual reasons for striking a juror, we are not presented with that issue in this case.

speculation qualifies as circumstantial evidence of the prosecutor's actual reasons, simply because it was the prosecutor herself who offered the speculation during the course of an evidentiary hearing.

In *Bui*, the State offered the testimony of an attorney who had assisted the prosecutor at trial, but had not participated in the jury selection process. *Bui*, 321 F.3d at 1308-09. The Eleventh Circuit concluded that such testimony was insufficient to meet the State's step two burden:

> [The assisting attorney's] familiarity with Bui's case and her role at trial have no bearing on her knowledge of [the prosecutor's] reasons for striking venire members during jury selection. That she was able to articulate reasons for the strikes could just as plausibly have resulted from the fact that she 'look[ed] over the transcript and the information still available in the district attorney's office,' as from actual knowledge of those reasons.

*Id*. at 1316. The same holds true here. The prosecutor, who could only offer conjecture and speculation about the reasons for her strikes, aptly observed that she "didn't do any more than [the court] could do." As she herself conceded, they were all "on the same page."

[6] The State also argues that the prosecutor testified as to her "general principles" of jury selection, and that such testimony was sufficient to meet the State's burden. The prosecutor explained: "Generally, I like jurors who have some good life experience. I tend to like and for whatever reason I tend to connect with older jurors. And I think I was just looking for people who would be, of course, fair to all sides." However, she immediately stated that she was not sure which of those general principles she considered in selecting the Paulino jury. "I can't really tell you whether there was any one kind of factor I was looking at in terms of this trial."

Indeed, the magistrate judge noted at the end of the hearing that the prosecutor had not offered testimony of what she "usually do[es]."[9] Rather, the prosecutor's statement that she generally sought fair jurors but did not really know what she considered in this particular trial is nothing more than a general assertion that her actions were not racially motivated.[10] We agree with the district court that the prosecutor's testimony was insufficient to meet the State's burden.

## B.

[7] This case next poses the following question: Where the district court concludes that the state has failed to satisfy its

---

[9]The State also maintains that the prosecutor testified that she was concerned with selecting jurors who would be favorable to law enforcement officials, and that she explained how that concern related to each of the strikes. A review of the evidentiary hearing transcript, however, makes clear that the prosecutor's explanation concerning the salience of law enforcement with respect to the strikes was part of her speculation or guesswork, as was highlighted by the court at the close of the hearing.

[10]Our circuit has not addressed whether a list of standard considerations, absent affirmative evidence that they were used in the particular case in question, is competent evidence of a prosecutor's actual reasons for striking certain jurors. We do not need to reach that issue today because the prosecutor in this case did not testify to a firm set of specific guidelines that she consistently employed. Accordingly, the out-of-circuit cases cited by the State suggesting that an attorney's particularized and consistently followed jury selection guidelines may constitute circumstantial evidence of the attorney's actual reasons for striking potential jurors are inapposite. *See, e.g., Green*, 414 F.3d at 300-01 (considering the prosecutor's very specific list of juror criteria she used in narcotics cases, coupled with her reliance on her contemporaneous notes from voir dire); *Polk v. Dixie Ins. Co.*, 972 F.2d 83, 84-85 (5th Cir. 1992) (per curiam) (considering the defense attorney's unequivocal testimony about the "turning factor in every decision [she] make[s] in every case [she] tr[ies]," but noting that "when an attorney offer[s] virtually nothing beyond 'I do not remember' " the party has not met its step two burden) (citing *Harrison v. Ryan*, 909 F.2d 84, 87 (3d Cir. 1990)); *United States v. Nicholson*, 885 F.2d 481, 483 (8th Cir. 1989) (noting that invocation of standard guidelines the prosecutor always used during jury selection amounted to an explanation that was "sufficiently specific under *Batson*").

burden of production, must the court continue on to *Batson's* step three? We recently held in *Yee v. Duncan* that the answer is "yes." "[A] failure to provide an explanation for exercising a strike does not relieve the trial court of its responsibility [at step three] to make the ultimate determination of whether there has been purposeful discrimination." *Yee*, 463 F.3d at 901. *See also Johnson*, 545 U.S. at 171 ("This burden of persuasion 'rests with, and never shifts from, the opponent of the strike.' . . . The first two *Batson* steps govern the production of evidence that allows the trial court to determine the persuasiveness of the defendant's constitutional claim.") (internal citations omitted). Here, the district court applied that analysis and found by a preponderance of the evidence that Paulino established purposeful discrimination—a finding that was not clearly erroneous.

In *Yee*, the prosecutor used her peremptory strikes to remove eight male venire-members from the jury pool. The defendant made a *Wheeler* objection and the prosecutor offered reasons for seven of the eight strikes, but could not "recall specifically what it was about" the remaining venire-member, Juror #4, that caused her to remove him. *Yee*, 463 F.3d at 896. The trial judge denied the defendant's *Wheeler* objection. In a subsequent federal habeas proceeding, the district court determined that the prosecutor's failure to offer a reason for striking Juror #4 was a per se violation of *Batson*, relying on cases providing that where the state fails to put forward a race-neutral reason at step two, the defendant prevails as a matter of law.

We reversed, holding that "[g]iven the Supreme Court's explicit directive that the ultimate burden is always with the defendant, any burden at step two cannot be definitive." *Id.* at 899. We explained that the trial court must always reach step three, because it is not until step three of the *Batson* process that the court "determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Id.* at 898 (quoting *Purkett v. Elem*, 514 U.S. 765, 768

(1995)). Where the State has put forward a race-neutral reason at step two, the court evaluates "all relevant circumstances," *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005), at step three, including whether the state's stated reasons are pretextual, to decide whether a preponderance of the evidence establishes purposeful discrimination.

[8] In a case such as Paulino's, where the state has *not* put forward an actual reason, "[s]uch a failure, or in this case an assertion of bad memory, is evidence of discrimination." *Yee*, 463 F.3d at 900. *See also Johnson*, 545 U.S. at 171 n.6 (stating that a prosecutor's refusal to offer a reason at step two "would provide additional support for the inference of discrimination raised by a defendant's prima facie case"); *cf. Hardcastle v. Horn*, 368 F.3d 246, 259-60 (3d Cir. 2004) (explaining that the opportunity to rebut the state's alleged race-neutral reason is an important part of the evidentiary hearing); *United States v. Alcantar*, 897 F.2d 436, 438 (9th Cir. 1990) (holding that the defendant may not be penalized for the state's failure to articulate its reasons due to the passage of time); *United States v. Thompson*, 827 F.2d 1254, 1262 (9th Cir. 1987) (same).

[9] Where the state fails to meet its burden of production, the evidence before the district court at step three—the prima facie showing plus the evidence of discrimination drawn from the state's failure to produce a reason—will establish purposeful discrimination by a preponderance of the evidence in most cases. Indeed, in such cases, there is no race-neutral evidence to weigh.[11]

---

[11]In *Yee*, there was circumstantial evidence of the prosecutor's actual nondiscriminatory reason for striking Juror #4, even though she had no independent recollection of it. She testified that her notes from jury selection reflected that Juror #4 had served on a prior jury that had reached a verdict. *See Yee*, 463 F.3d at 896. The voir dire transcript provided that Juror #4 had served on a medical malpractice case. *Id.* at 901. Yee was a dental assistant, prosecuted for "nonconsensual and improper sexual con-

The district court properly applied this analysis. Considering the strength of the prima facie case and the absence of race-neutral reasons explaining the strikes, the court found at step three that the preponderance of the evidence supports a finding of purposeful discrimination. The district court's finding is not clearly erroneous.

**[10]** Paulino presented a strong prima facie case of discrimination. As we explained in *Paulino I*, the prosecutor's use of peremptory strikes created "stark" statistical disparities. *Paulino I*, 371 F.3d at 1091. The prosecutor removed five of the six, or 83% of the potential African-American jurors. *Id*. The prosecutor also used five of her six, or 83% of her peremptory challenges to strike African-American jurors. *Id*. The district court noted that these statistics "are even more troubling when viewed in light of the pattern in which the prosecutor exercised her peremptory challenges." As the magistrate judge explained:

> [T]he record reflects [that] the prosecutor never accepted the jury with a black juror other than seated juror #2 (prospective juror #13). In fact, after using two of her first three peremptory challenges against the other two blacks in the jury box at the time, the prosecutor immediately excused each of the three subsequent black jurors called into the jury box.

**[11]** And as discussed extensively above, the State offered no evidence of race-neutral reasons to explain the prosecu-

tact when he placed his penis in the hands of two adult women as they awoke from general anesthesia after dental procedures," and for "repeatedly [sticking] his hand down a ten-year-old girl's pants." *Id*. at 895-96. In light of that evidence, and the totality of the circumstances, we concluded that under AEDPA's exceedingly deferential standard of review, the California Court of Appeal was not objectively unreasonable in determining that Yee's prima facie case, plus the prosecutor's lack of memory, did not add up to purposeful discrimination by a preponderance of the evidence. *Id*. at 901.

tor's pattern of strikes or the resulting statistical disparities. In light of Paulino's strong prima facie case, and the total lack of evidence rebutting it, we conclude, as did the district court, that Paulino's habeas petition should be granted.

**AFFIRMED**.