RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0112p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

FREDERICK JESSE HARRIS,
             *Petitioner-Appellant*,

      *v.*

GLENN HAEBERLIN, Warden,
             *Respondent-Appellee.*

No. 09-5858

———————————

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 03-00754—John G. Heyburn II, District Judge.

Decided and Filed:  May 28, 2014

Before:  BATCHELDER, Chief Judge; COLE and GRIFFIN, Circuit Judges.

———————————

### COUNSEL

**ON BRIEF:** David Debold, GIBSON, DUNN & CRUTCHER LLP, Washington, D.C., for Appellant.  Bryan D. Morrow, Ken W. Riggs, OFFICE OF THE KENTUCKY ATTORNEY GENERAL, Frankfort, Kentucky, for Appellee.

      GRIFFIN, J., delivered the opinion of the court, in which, COLE, J., joined, and BATCHELDER, C.J., joined in the result.  COLE, J. (pp. 14–15), delivered a separate concurring opinion.  BATCHELDER, C.J. (pp. 16–18), delivered a separate opinion concurring in the judgment.

———————————

### OPINION

———————————

      GRIFFIN, Circuit Judge.  Previously, we remanded Frederick Jesse Harris's 28 U.S.C. § 2254 petition to the district court for a hearing to determine whether the prosecutors at his state trial had exercised certain peremptory strikes in a racially discriminatory manner.  The district court held a reconstructed *Batson v. Kentucky*,

1

476 U.S. 79 (1986), hearing and concluded that the strikes in question had not been motivated by purposeful racial discrimination. After remand, Harris appeals the district court's factual findings. We affirm.

I.

We have previously detailed the facts underlying this case. *See Harris v. Haeberlin*, 526 F.3d 903, 905–09 (6th Cir. 2008). Harris's current argument now hinges solely on the prosecution's peremptory strike of Juror 49, who is African-American. The facts pertinent to this claim are as follows:    After jury selection in Harris's 1998 Kentucky state criminal trial, Harris objected to the prosecution's use of its peremptory strikes, four of which eliminated prospective African-American jurors from the jury pool, including Juror 49. The trial court accepted the prosecution's rationale that Juror 49 was struck "because she had difficulty following questions asked of her, was joking with a neighboring juror who was subsequently struck for cause, and had a grandson who was convicted for his involvement in a shooting." *Id.* at 906.

Harris was convicted and sentenced to seventy-five years in prison. After he was sentenced, Harris discovered that a courtroom videotape system had reactivated during a recess in his criminal trial and had recorded a conversation among the prosecutors in which they discussed how to exercise the last of their peremptory strikes. During this conversation, the chief prosecutor, John Dolan, reviewed the eight prospective jurors whom the prosecution had already struck and commented, "We've got [name deleted], 49, she's the old lady, the black lady. *The other one is already off*." *Id.* at 907 (emphasis added).

Harris argued on direct appeal in the Supreme Court of Kentucky that the newly-discovered videotape evidence clearly demonstrated the prosecution's improper reliance on race. Nevertheless, a 4-3 majority of the Supreme Court of Kentucky rejected Harris's *Batson* claim, reviewing the videotape evidence and concluding that it did not put into question the soundness of the trial court's adjudication of Harris's *Batson* allegations. *Id.* at 908. Harris subsequently pursued state habeas relief, but it was denied.

In 2003, Harris filed a § 2254 petition in federal district court, alleging various constitutional defects in his state prosecution, including a *Batson* violation.  The district court denied his petition but granted a certificate of appealability on the *Batson* claim.

Harris appealed to this court.  In 2008, a majority of this panel ruled that *Batson* and *Hernandez v. New York*, 500 U.S. 352, 365 (1991), required a *trial* court—rather than an *appellate* court—to review the uniquely relevant videotape evidence that was discovered in Harris's case after his sentencing but prior to his direct appeal.  *See Harris*, 526 F.3d at 912.  We held that, "[b]ecause the after-acquired videotape is an ideal piece of evidence with which to assess prosecutorial credibility, the Kentucky Supreme Court unreasonably applied clearly established federal law, as enshrined in *Hernandez*, when it upheld the trial court's *Batson* finding without allowing it to consider this new evidence."  *Id.*  Having determined that the state appellate court had unreasonably applied *Batson* by failing to remand Harris's case to the state trial court, we gave Harris a specific remedy for the state courts' error, vacating and remanding his case to the district court for it "to conduct a renewed *Batson* hearing in light of the videotaped evidence."  *Id.* at 910.  We directed that, at this "second *Batson* hearing," the district court must "reassess prosecutorial credibility in light of the videotaped evidence."  *Id.* at 914.

On remand, the district court held the required *Batson* hearing.  The district court took testimony from both of the state prosecutors involved in Harris's case, reviewed the videotape, reviewed the prosecutors' contemporaneous voir dire notes, and reviewed the record of the *Batson* hearing that had taken place before the state trial court.  It then ruled (1) that it had been able to reconstruct a meaningful *Batson* hearing, despite the lapse of eleven years since Harris's prosecution, and (2) that the prosecution's peremptory strikes had not been improperly motivated by race.  *See Harris v. Haeberlin*, 2009 WL 1883934, at *6–12 (W.D. Ky. June 30, 2009).

Harris again appeals the district court's judgment.

II.

On appeal, Harris argues that the district court erred in concluding (1) that it could hold a meaningful *Batson* hearing more then eleven years after his state trial, and (2) that the prosecution's strike of Juror 49 was not improperly motivated by racial considerations.

A.

At the outset, the parties briefly allude to *Cullen v. Pinholster*, 131 S. Ct. 1388 (2011)—which the Supreme Court decided while Harris's current appeal was pending—questioning whether it bars our consideration of the new evidence produced during the evidentiary hearing on remand. It does not. *Pinholster* held that "evidence introduced in federal court has no bearing on [28 U.S.C.] § 2254(d)(1) review"—that is, on whether a state court's adjudication of a claim was contrary to or involved an unreasonable application of clearly established federal law. *Id.* at 1400. Instead, "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome the limitation of § 2254(d)(1) on the record that was before that state court." *Id.*; *see Moore v. Mitchell*, 708 F.3d 760, 780 (6th Cir.), *cert. denied*, 134 S. Ct. 693 (2013).

In this case, we determined in our prior decision that, on the basis of the evidence that was before the state appellate court, the state court unreasonably disregarded *Batson*'s directive "that the trial court, not the appellate court, assess the prosecutor's demeanor as captured on the videotape." *Harris*, 526 F.3d at 913–14. We then gave Harris a specific form of relief for the state court's unreasonable federal-law error: we remanded the case to the district court for "a second *Batson* hearing" so that the district court could "reassess prosecutorial credibility" and determine if the relevant peremptory strikes had been improperly motivated. *Id.* at 914.

*Pinholster* is inapplicable to this case because it precludes consideration of evidence introduced in federal court only when determining whether a state court's adjudication of a claim involved an unreasonable federal-law error. *See Pinholster*,

131 S. Ct. at 1400.[1]  Here, by contrast, the evidence introduced in federal court was not considered for the purpose of ascertaining whether the state court had unreasonably applied clearly-established federal law, because we had already concluded that the state court had done so.  Instead, the evidentiary hearing was ordered as a remedy for the state court's unreasonable federal-law error:  the state court had denied Harris a meaningful *Batson* hearing before a trial court, so we ordered that he receive one, albeit in the federal district court.  *See, e.g.*, *Hardcastle v. Horn*, 368 F.3d 246, 261 (3d Cir. 2004) (noting that the federal habeas statutes do not permit a federal appellate court to remand a habeas petition to a state court for an evidentiary hearing and directing that the district court review the merits of a § 2254 petitioner's *Batson* claim in a federal evidentiary hearing); *Jordan v. Lefevre*, 293 F.3d 587, 593 (2d Cir. 2002) (where the state courts have inadequately dealt with a state prisoner's *Batson* claim, "the responsibility for assessing the prosecutor's credibility and determining his intent falls on the district judge").

Because the evidentiary hearing in this case was ordered as a remedy for a federal-law error that had already been found by this court on the basis of the record that was before the state courts, *Pinholster* does not bar consideration of the evidence introduced for the first time in the district court on remand.  *See Pinholster*, 131 S. Ct. at 1400.  The Fifth Circuit has reached the same conclusion on similar facts.  *See Smith v. Cain*, 708 F.3d 628 (5th Cir.), *cert. denied*, 134 S. Ct. 134 (2013).  It held that, where the district court "determined on the basis of the state court record that the state court's *Batson* analysis . . . involved an unreasonable application of [ ] clearly established Federal law" and subsequently granted the petitioner relief for the state court's error "in the form of an evidentiary hearing on [the petitioner's] *Batson* claim," *Pinholster* did not bar the district court's consideration of the evidence produced at the evidentiary hearing.  *Id.* at 634–35 (internal quotation marks omitted).  *Smith*'s reasoning is sound, and its

---

[1]Federal courts are also barred by the plain terms of § 2254(d)(2) from reviewing federal court evidence to determine whether the state court's decision involved an unreasonable determination of the facts. *See Pinholster*, 131 S. Ct. at 1400 n.7.

analysis applies equally to Harris's case.  The district court properly reviewed the evidence introduced at the evidentiary hearing.

B.

The first strand of Harris's argument on the merits is his assertion that the district court erred in concluding that it could hold a meaningful *Batson* hearing more than eleven years after the jury selection in his state trial.  The district court's "assessment of the feasibility of reconstruction [i]s entitled to substantial deference," *Jordan*, 293 F.3d at 594, and is reviewed for an abuse of discretion.  *See Green v. Travis*, 414 F.3d 288, 300 (2d Cir. 2005); *Pruitt v. McAdory*, 337 F.3d 921, 929 n.4 (7th Cir. 2003).

*Batson* protects a criminal defendant's constitutional right "to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria." *Batson*, 476 U.S. at 85–86.  A challenge under *Batson* to a prosecutor's exercise of a peremptory strike involves three sequential steps.  First, "the opponent of the peremptory strike must make a prima facie case that the challenged strike was based on race." *United States v. Lawrence*, 735 F.3d 385, 443 (6th Cir. 2013).  Second, if a prima facie case is established, the prosecution must articulate a race-neutral explanation for the strike. *Id.* Because the burden of persuasion remains on the challenger to demonstrate purposeful discrimination, the prosecution's articulated explanation "need not be particularly persuasive or plausible." *Id.*  Third, the trial court "must . . . assess the plausibility of the prosecution's explanation in light of all the evidence, to determine whether the defendant has met his burden of proving purposeful discrimination." *Id.*

The crux of Harris's argument is that his *Batson* claim must prevail as a matter of law where the prosecution has no independent recollection of the reasons for its peremptory strike.  In Harris's view, the whole purpose of the remand in 2008 was to learn what the prosecutor meant by the statement, "The other one is already off," so the prosecutor's failure to recall what he meant by the statement deprived the district court of its ability to find the fact for which the remand was directed.

There are two flaws in Harris's position. First, Harris misconstrues the purpose of the remand. The purpose of the remand was to give Harris a specific remedy that the state court had denied him: a *Batson* hearing at which a *trial* court—as opposed to an *appellate* court—could review the newly-discovered videotape evidence, weigh it against the prosecutors' on-the-record explanations for their peremptory strikes, and make an assessment of their credibility. *Harris*, 526 F.3d at 913–14. That is what the federal evidentiary hearing gave Harris: *trial* court review of the relevant *Batson* evidence—including the prosecutors' record testimony in the initial *Batson* hearing—in light of the videotape. Because the purpose of the evidentiary hearing was not as narrow as Harris believes, the prosecutors' inability to fully recall in the district court what their previous statement had meant did not wholly frustrate the utility of the evidentiary hearing.

Second, Harris's repeated assertion that his claim must succeed in light of the prosecutors' lack of an independent recollection about the meaning of the statement ignores the substantial body of authority that directs otherwise. The second step of the *Batson* analysis is a low bar that requires only that the prosecutor produce a race-neutral justification for the strike. The justification need not be persuasive; in fact, if true, it may even be "only a frivolous or utterly nonsensical justification." *Johnson v. California*, 545 U.S. 162, 171 (2005). As a result, a prosecutor's lack of an independent recollection about the reasons for his peremptory strike is not fatal to the prosecution's ability to articulate a race-neutral justification for the strike at *Batson*'s second step. *See Lark v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 596, 626 (3d Cir. 2011) (rejecting argument that lack of an independent recollection automatically means that the petitioner's *Batson* claim must succeed).

Nor does the prosecutors' lack of independent recollection doom the Commonwealth's position at the third step of the *Batson* analysis. The trial court's determination on the issue of intent need not be based on direct evidence of improper motivation; it may also be informed by available circumstantial evidence of intent. *See Batson*, 476 U.S. at 93; *United States v. Thompson*, 735 F.3d 291, 297 (5th Cir. 2013);

*Lee v. Comm'r, Ala. Dep't of Corr.*, 726 F.3d 1172, 1199 (11th Cir. 2013), *cert. denied*, 134 S. Ct. 1542 (2014); *Paulino v. Harrison*, 542 F.3d 692, 700 (9th Cir. 2008); *Hardcastle*, 368 F.3d at 260; *Bui v. Haley*, 321 F.3d 1304, 1317 (11th Cir. 2003); *Johnson v. Love*, 40 F.3d 658, 667 (3d Cir. 1994).

Because circumstantial evidence may support a district court's finding of intent, it is possible to reconstruct a meaningful *Batson* hearing even in the absence of a prosecutor's independent recollection of his motives for making the challenged strike. "Th[e] burden of persuasion rests with, and never shifts from," the petitioner alleging a *Batson* violation. *Johnson*, 545 U.S. at 171. Thus, where a prosecutor can generally recall the trial, review contemporaneous transcripts or notes, and articulate race-neutral explanations for the challenged strikes, the issue of intent is ordinarily well within the province of the trial court, even absent the prosecutor's independent recollection about his motivations for the specific strikes in question. *See, e.g.*, *Crittenden v. Ayers*, 624 F.3d 943, 958 (9th Cir. 2010) ("During reconstruction [of the prosecutor's reasons for striking a juror], the state may rely on any relevant evidence, such as jury questionnaires, the prosecutor's notes or testimony of the prosecutor."); *Yee v. Duncan*, 463 F.3d 893, 898 n.2 (9th Cir. 2006) (speculation about a prosecutor's motive is not permitted, but circumstantial evidence may be reviewed where "other circumstances, such as forgetfulness, prevent the proponent of the strike from coming forward with an explanation for the strike"); *Green*, 414 F.3d at 300–01 (prosecutor could not recall the strikes in question but reviewed her contemporaneous notes and testified as to her usual race-neutral practice); *Hardcastle*, 368 F.3d at 260–61 (noting that the state is entitled to reconstruct a prosecutor's rationale for the challenged strikes even where the prosecutor has no independent recollection of his motivation); *Jordan*, 293 F.3d at 595 (prosecutor recalled the case, reviewed his contemporaneous notes, had previously given explanations for each of the challenges in question, and testified as to his general philosophy of jury selection).

The cases upon which Harris relies do not support his position. In *Paulino*, for example, the Ninth Circuit held that it was insufficient for a prosecutor to simply "guess

why she might have removed the jurors in question" where she had no independent recollection of her actual reasons for making the challenged strikes. *Paulino*, 542 F.3d at 700. But in *Paulino*, not only did the prosecutor lack any independent recollection of the strikes in question, the voir dire transcript also "did not refresh her recollection; her jury selection notes no longer existed; and there were no contemporaneous oral statements regarding the contested strikes because the trial court never asked her for an explanation." *Id.* The other cases cited by Harris involved circumstances similarly bereft of circumstantial evidence bearing on the issue of prosecutorial intent. *See, e.g.*, *United States v. Thomas*, 320 F.3d 315, 320 (2d Cir. 2003) (the trial court "was unable to make any findings as to the credibility of the government's stated reasons" for the challenged strikes); *United States v. Alcantar*, 897 F.2d 436, 438 (9th Cir. 1990) ("[a]lmost no information as to the excluded or accepted jurors was available" on the question of prosecutorial intent).

Here, by contrast, Dolan had already testified on the record about his motivations at the initial *Batson* hearing. Our remand directed the district court to reassess prosecutorial credibility in light of the videotape. The district court did so by examining materials that were contemporaneous to the state trial; namely, the videotape, the record of the jury selection proceedings, the prosecution's voir dire notes, and the prosecutors' testimony before the state trial court at the initial *Batson* hearing. The district court supplemented this evidence with additional testimony given at the evidentiary hearing, where Dolan explained his voir dire notes and his typical jury selection strategies, testified about his recollection of specific jurors in Harris's trial and about excusing Juror 155 for cause, and articulated a race-neutral reason for excusing Juror 49—her conversation with Juror 155—based on his review of contemporaneous materials. Given this array of circumstantial evidence bearing on prosecutorial motivation, the district court did not abuse its discretion in concluding that it could conduct a meaningful *Batson* hearing, despite the eleven-year interim between jury selection and the evidentiary hearing.

C.

Harris next claims that the district court clearly erred in determining that the prosecutors' peremptory strike of Juror 49 was not improperly motivated by race. A trial court's determination of a *Batson* claim is reviewed "with great deference," *United States v. Copeland*, 321 F.3d 582, 599 (6th Cir. 2003) (internal quotation marks omitted), and its "ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous." *Snyder v. Louisiana*, 552 U.S. 472, 477 (2008). *Cf. Jamerson v. Runnels*, 713 F.3d 1218, 1225 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 1285 (2014) (opining that "AEDPA deference still applies" to state court *Batson* decisions where the federal district court holds a reconstructed *Batson* hearing).

Here, there was no clear error in the findings of fact. The Commonwealth satisfied its burden at step two of the *Batson* analysis by articulating a race-neutral reason for the prosecution's strike of Juror 49. *See Johnson*, 545 U.S. at 171 (the prosecution satisfies this burden even by advancing "only a frivolous or utterly nonsensical justification"). And at step three, as we exhaustively recounted in Harris's earlier appeal, "the evaluation of a prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province." *Harris*, 526 F.3d at 912 (citation and internal quotation marks omitted). *See also Moody v. Quarterman*, 476 F.3d 260, 268 (5th Cir. 2007) (opining that "the third step of the [*Batson*] analysis should lie solely in the province of trial judges").

Although Dolan admitted at the district court evidentiary hearing that he had no independent recollection of his motivation for striking Juror 49, he was able to review his contemporaneous notes and the videotape of the voir dire. Dolan's notes indicated that Juror 49 had been sitting next to Juror 155, a white juror who had been struck for cause because she claimed to be an eyewitness to the events of the crime and had already formed an opinion that Harris was not guilty. Dolan noted at the federal evidentiary hearing that he had informed the state trial court that Juror 49 had been joking with Juror 155, and he testified that he believed that his subsequent comment—"The other one is

already off"—referred to Juror 155 (the "other" party to the conversation between Jurors 49 and 155) and was therefore race-neutral.

Although Harris claims that Dolan offered multiple rationales for striking Juror 49 and was therefore dissembling, "[d]etermining whether the reason offered is an honest one turns on in-person credibility assessments which clearly the district court is in the best position to make." *United States v. Montgomery*, 210 F.3d 446, 453 (5th Cir. 2000); *see also Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011) (noting that a *Batson* claim "turns largely on an evaluation of credibility" (internal quotation marks omitted)); *Lawrence*, 735 F.3d at 443 ("[d]eference to the trial court's findings is particularly appropriate" in a *Batson* challenge because it requires an assessment of credibility). The circumstantial evidence in this case—which includes the prosecutors' testimony at both the initial *Batson* hearing and the evidentiary hearing held in the district court—was sufficient to support the district court's resolution of the issue of intent. As the Supreme Court has observed, the "best evidence" bearing on the issue of whether an attorney's articulated race-neutral explanation is credible "often will be the demeanor of the attorney who exercises the challenge." *Hernandez*, 500 U.S. at 365. Here, the district court was able to assess the credibility of Harris's prosecutors as they gave their explanations for their peremptory strike of Juror 49 and the suspicious-sounding comment. *See Thaler v. Haynes*, 559 U.S. 43, 49 (2010) (per curiam) (*Batson* determinations are not required to be made by the same judge who presided over jury selection). Because the district court's determination was informed by matters squarely within the core competence of a finder of fact, this court will not lightly second-guess the conclusions that the district court drew from the facts that it was "peculiarly" expert in divining. *Harris*, 526 F.3d at 913 (quoting *Hernandez*, 500 U.S. at 365).

Harris asserts that Dolan's suspect statement plausibly may have referred to a different African-American juror who had also been removed from the jury pool. But the statement is obviously susceptible to competing interpretations. It could just as easily have referred to Juror 155, as Dolan later claimed. In resolving this question, the district court simply came down on the side of the prosecution.

There is nothing in the record that persuades us that the interpretation accepted by the district court was clearly erroneous. Contrary to Harris's assertion, Dolan never admitted that Juror 49's conversation with Juror 155 would not have prompted him to exercise a peremptory strike. Harris has not identified any other prospective jurors who were not peremptorily struck by the prosecution, despite having similarly conversed with a juror who was later struck for having pre-judged the case. *Cf. Harris v. Hardy*, 680 F.3d 942, 949 (7th Cir. 2012) (noting that inconsistent application of a race-neutral justification may bear upon credibility). Despite Harris's efforts to cast Dolan's explanations into doubt, none of Harris's arguments renders Dolan's explanation of his statement so "pretextual" or "implausible," *Snyder*, 552 U.S. at 453, that this court could conclude that the district court's findings in this respect were clear error. *See Johnson*, 545 U.S. at 171 (noting that the burden of proof "rests with, and never shifts from," the petitioner alleging a *Batson* violation); *Pruitt*, 337 F.3d at 930 ("We cannot reverse a trial court's finding that proffered, race-neutral, reasons for a strike were credible unless the court's finding is clearly erroneous—even if we find it dubious." (citation omitted)).

In accepting Dolan's explanation of his statement, the district court credited his previous representation to the state trial court that Juror 49 was struck because of her conversation with Juror 155. *See Harris*, 526 F.3d at 906. This finding of a race-neutral explanation is sufficient to defeat Harris's current claim.

Ironically, the success of Harris's previous appeal to this court was predicated on his assertions that a *trial* court, rather than an *appellate* court, must be permitted to assess whether the prosecution exercised its peremptory strikes in a racially discriminatory manner. In agreeing with Harris, we could hardly have been more insistent in emphasizing "the trial court's central role in assessing the facts necessary to conduct the three-step inquiry into allegations of racially discriminatory peremptory challenges" and in stressing that "reviewing courts . . . ordinarily should give [a trial court's *Batson*] findings great deference." *Id*. at 913 (internal quotation marks omitted). Yet, now that Harris's request has been granted and a trial court has made factual findings on his *Batson* claim, he reverses course and asks for exactly what he previously

deplored: that an appellate court substitute its own assessment of the facts for those found in the trial court. Granting Harris the relief he now seeks would directly contradict the relief that he sought and was afforded. *See id.*

In Harris's initial appeal to this court, we remanded this case for a trial court to determine whether, in light of the newly-discovered videotape evidence, Dolan's explanations for the strikes could be believed. *Id.* at 914. The district court found that they could. Deference to a trial court's *Batson* determination is required "[i]n the absence of exceptional circumstances." *Snyder*, 552 U.S. at 477. Because none are presented here, the district court's finding that the prosecution did not improperly rely on racial considerations when striking Juror 49 will not be disturbed on appeal.

III.

We affirm the judgment of the district court.

---

**CONCURRENCE**

---

COLE, Circuit Judge, concurring.   During voir dire, the chief prosecutor explained privately to his colleagues that he would strike "the old lady, the black lady" because "the other one is already off."   He did not realize a video camera had captured his comments.   The district court found that the prosecutor's strike was not motivated by the juror's race, and I agree with the lead opinion that, under *Batson* and its progeny, we must affirm the district court's judgment.   I write separately, however, to emphasize two important considerations.

First, although evidence of a prosecutor's actual reasons for striking a juror may be circumstantial, speculation is never proper evidence of a prosecutor's reasons, *see Johnson v. California*, 545 U.S. 162, 172 (2005), and a prosecutor's lack of an independent recollection of his reasons may be evidence of discriminatory intent, *see Yee v. Duncan*, 463 F.3d 893, 899–900 (9th Cir. 2006); *see also Johnson*, 545 U.S. at 171 n.6 (noting that a prosecutor's refusal to testify about his reasons for striking a juror "would provide additional support for the inference of discrimination").   Indeed, if the State has not put forth the prosecutor's actual reasons for striking a juror, rather than conjecture or speculation, it will lose the *Batson* challenge in most cases.   *Paulino v. Harrison*, 542 F.3d 692, 702–03 (9th Cir. 2008); *see also Johnson*, 545 U.S. at 172 ("The *Batson* framework is designed to produce *actual answers* to suspicions and inferences that discrimination may have infected the jury selection process." (emphasis added)).

Second, in the absence of sufficient, competent circumstantial evidence, the passage of time may make it impossible for a district court to hold a meaningful *Batson* hearing.   *See Snyder v. Louisiana*, 552 U.S. 472, 486 (2008) ("Nor is there any realistic possibility that this subtle question of [the prosecutor's reasons for striking a juror] could be profitably explored further on remand at this late date, more than a decade after petitioner's trial."); *Harris v. Hardy*, 680 F.3d 942, 955 (7th Cir. 2012) (noting that

"conclusory comments by the trial judge about the [prosecutor's] credibility ring hollow" because the prosecutor's "explanation of the reasons for the strikes appears to have been recreated, principally from reviewing the transcripts of the jury selection process, . . . roughly 3 years after the strikes were used"); *Crittenden v. Ayers*, 624 F.3d 943, 958 (9th Cir. 2010) ("[T]he court may reject a reconstructed articulation [of the prosecutor's reasons for striking a juror] as mere 'speculation' or accept it as properly based on relevant circumstantial evidence."); *United States v. McMath*, 559 F.3d 657, 666 (7th Cir. 2009) ("[I]f the passage of time precludes the district court from making factual findings, it must vacate the judgment of conviction."); *Dolphy v. Mantello*, 552 F.3d 236, 240 (2d Cir. 2009) ("[I]f the passage of time has made such a determination [of the prosecutor's state of mind at the time of jury selection] impossible or unsatisfactory, the district court may grant the [habeas] writ contingent on the state granting [the defendant] a new trial."); *Riley v. Taylor*, 277 F.3d 261, 294 (3d Cir. 2001) ("[A] new trial is especially appropriate where[,] as here, the passage of time makes a new evidentiary hearing on the petition impossible." (internal quotation marks omitted)).

I understand today's opinion not to undermine these considerations in any way. With these additional comments, I join Judge Griffin's lead opinion.

---

**CONCURRENCE IN THE JUDGMENT**

---

ALICE M. BATCHELDER, Chief Judge, concurring in the judgment only. The lead opinion concludes that Petitioner Harris is not entitled to habeas relief. For the reasons stated in my dissent from the prior panel opinion, I agree. *See Harris v. Haeberlin*, 526 F.3d 903, 914-21 (6th Cir. 2008) (Batchelder, C.J., dissenting). Therefore, I concur in the judgment.

As I explained in that dissent, the prior panel majority was mistaken in its proposition that *Batson* announces a clearly established law forbidding a state appellate court from considering new *Batson* evidence. This led to the further mistake, and unprecedented proposition, that upon discovery of new *Batson* evidence at the appellate stage, a state appellate court must *sua sponte* remand the case to the state trial court for redetermination in light of that new evidence. And, as the Supreme Court subsequently made clear, the panel majority was also mistaken in ordering the federal district court to conduct a new "reconstructed" *Batson* hearing, collect new evidence, and decide the *Batson* claim *de novo*. *See Cullen v. Pinholster*, 563 U.S. --, 131 S. Ct. 1388, 1398 (2011) ("It would be contrary to th[e] purpose [of § 2254(d)] to allow a petitioner to overcome an adverse state-court decision with new evidence introduced in a federal habeas court and reviewed by that court in the first instance effectively *de novo*."). While the prior panel majority offered a novel interpretation of the law, the Supreme Court in *Pinholster* announced a clearly established rule: "We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Id*.

Attempting to overcome this prohibition, the lead opinion commits yet another mistake. The lead opinion attempts to distinguish *Pinholster* because it finds --- relying entirely on the record that was before the state court --- that the state court "decision" was a misapplication of federal law. With this premise, the lead opinion purports to satisfy § 2254(d)(1), thereby releasing itself from the limitations of both § 2254(d)(1)

and *Pinholster*, and justifying its order of a new evidentiary hearing and a *de novo* *Batson* re-determination. Importantly, the lead opinion considers the wrong decision. There are two state court "decisions" at play and the lead opinion here is as mistaken as was the petitioner in the case of *Greene v. Fisher*:

> [Petitioner] Greene alternatively contends that the relevant 'decision' to which the 'clearly established Federal law' criterion must be applied is the decision of the state supreme court . . . even when (as here) that decision does not adjudicate the relevant claim on the merits. This is an implausible reading of § 2254(d)(1). The text, we repeat, provides that habeas relief
>
>> 'shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law. . . .'
>
> The words 'the adjudication' in the 'unless' clause obviously refer back to the 'adjudication on the merits,' and the phrase 'resulted in a decision' in the 'unless' clause obviously refers to the decision produced by that same adjudication on the merits. A later affirmance of that decision on alternative procedural grounds, for example, would not be a decision resulting from the merits adjudication.

*Greene v. Fisher*, 565 U.S. --, 132 S. Ct. 38, 44-45 (2011) (certain editorial marks omitted). To repeat: the relevant decision to which the clearly established federal law criterion must be applied obviously refers to the decision produced by the adjudication on the merits.

Here we have two *Batson*-related questions with associated state-court decisions: one substantive (on the merits), the other procedural (i.e., which court should consider the new evidence in the first instance). The relevant "decision" for the § 2254(d)(1) inquiry is the decision on the *substantive* question: whether the Kentucky Supreme Court unreasonably applied *Batson* when it decided that the state prosecutors had not exercised certain peremptory strikes in a racially discriminatory manner. But the lead opinion (like the panel majority before) thinks the relevant § 2254(d)(1) "decision" is the one deciding the *procedural* question: whether the Kentucky Supreme Court unreasonably applied

*Batson* when it failed to remand the case to the state trial court to reconsider the substantive question in light of the newly discovered videotape evidence.

The lead opinion is mistaken. The procedural decision (not to remand the case) does not adjudicate Harris's claim on the merits; the merits adjudication is the *substantive* decision (that the prosecutors had not exercised certain peremptory strikes in a racially discriminatory manner). The lead opinion bases its § 2254(d)(1) determination --- and justifies its subsequent holdings --- on an ancillary decision that did not adjudicate the relevant claim on the merits.

Because the lead opinion did not satisfy § 2254(d)(1), it did not actually distinguish *Pinholster*; instead, *Pinholster* applies, the district court's evidentiary hearing was improper and should be stricken, and the district court's "reconstructed" *de novo Batson* analysis is a nullity. Based on the foregoing, I cannot join any of the lead opinion's reasoning or holdings. But, as fully explained in my prior dissent, I do agree that Petitioner Harris is not entitled to habeas relief on this claim.

Therefore, I concur in the judgment only.